**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| John Trenton Pendarvis, | ) | C/A No: _2:22−cv−03142-BHH-MHC_ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT** |
| Alan M. Wilson, Mark A. Keel, Hugh E. | ) | **(42 U.S.C. § 1983 _et seq._)** |
| Weathers, L.C. Knight, W. Jeffrey Young, | ) | **(Jury Trial Demanded)** |
| Robert D. Cook, Emory Smith, Jr., Joanne Lee, | ) | |
| David S. Jones, T. Stephen Lynch, Harley L. | ) | |
| Kirkland, Wesley Vorberger, Robert Kittle, | ) | |
| Adam L. Whitsett, Frank O'Neal, Jason Wells, | ) | |
| Glenn Wood, John Neale, Rhett Holden, Alden | ) | |
| G. Terry, Derek M. Underwood, J. Clint Leach, | ) | |
| Aaron Wood, John Stokes, Vanessa Elsalah, | ) | |
| Brittany Jeffcoat, Eva Moore, Ray Dixson, | ) | |
| Frank Thompson, Robert Krutak, Jonathan | ) | |
| Calore, Charlie Scrubbs, and Wayne Eaddy, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

**PRELIMINARY STATEMENT OF CASE & PARTIES**

1. Plaintiff John Trenton Pendarvis (hereinafter sometimes referred to as "Plaintiff," "Pendarvis," or as "Trent") is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, Trent was a 4th generation farmer, cultivating crops on family farmlands in Dorchester County, South Carolina.

2. Pendarvis brings this lawsuit alleging violations of his constitutional rights by the defendants in their individual capacities pursuant 42 U.S.C. §§1983 _et seq._, for the defendants' conduct, individually and in concert with others, under color of state law in falsely arresting Pendarvis, maliciously prosecuting him, unlawful taking and destruction of his property, depriving him

1

of due process and conspiring to do the same, then further conspiring to obstruct justice and deny Pendarvis due process through intentional and willful discovery abuse in state court actions. This conduct includes willfully attempting to mislead a state court judge to authorize their seizure and destruction action, conspiring to seize and destroy the Pendarvis' property after that state court judge had refused to authorize such, then denying that the state court judge had refused to authorize the seizure and destruction of the Pendarvis' property, and the willful and intentional obstruction of justice through discovery misconduct in both the criminal and state court cases arising from these matters.

3. Pendarvis is informed and believes that all defendants holding constitutional offices, Class I law enforcement positions and/or licenses to practice law had sworn duties to preserve, protect and defend the Constitution of the United States. Those sworn duties included preserving, protecting and defending Pendarvis' Constitutional rights by refusing to act in such ways that would violate his constitutional rights and/or speaking out and stopping others from acting in such ways that would violate his constitutional rights and/or supervising those agents/employees under their supervision in such a way to prohibit them from violating his constitutional rights.

## AGENCY HEAD DEFENDANTS

4. Plaintiff is informed and believes that Alan M. Wilson (hereinafter sometimes referred to as "WILSON"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WILSON was the Attorney General for the State of South Carolina and as such was the head of and supervisory agent of the South Carolina Attorney General's Office (SCAG). WILSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for

SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WILSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

5. Plaintiff is informed and believes that Mark A. Keel (hereinafter sometimes referred to as "KEEL"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, KEEL was the Chief for the South Carolina Law Enforcement Division (SLED) and as such was the head of and supervisory agent of SLED. KEEL is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KEEL acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

6. Plaintiff is informed and believes that Hugh E. Weathers (hereinafter sometimes referred to as "Weathers"), is a citizen and resident of Orangeburg County, South Carolina. At all times relevant to this action, Weathers was the Commissioner of the South Carolina Department of Agriculture (DAG) and as such was the head of and supervisory agent of DAG. WEATHERS

is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WEATHERS acted independently and/or conspired with the other defendants to KEEL acting independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's constitutional rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

7. Plaintiff is informed and believes that L.C. Knight (hereinafter sometimes referred to as "KNIGHT"), is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, KNIGHT was the Sheriff for Dorchester County Sheriff's Office (DCSO) and as such was the head of and supervisory agent of DCSO. KNIGHT is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as the head of and supervisory agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KNIGHT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

## SCAG DEFENDANTS

8. The following individual defendants listed in this section, along with WILSON, may hereinafter collectively be referred to as "SCAG Defendants."

9. Plaintiff is informed and believes that W. Jeffrey Young (hereinafter sometimes referred to as "YOUNG"), is a citizen and resident of Sumter County, South Carolina. At all times relevant to this action, YOUNG was the Chief Deputy of the South Carolina Attorney General's Office (SCAG) and as such was a supervisory agent/employee of SCAG. YOUNG is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, YOUNG acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

10. Plaintiff is informed and believes that Robert D. Cook (hereinafter sometimes referred to as "COOK"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, COOK was the Solicitor General (SG) and head of SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. COOK is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, COOK acted independently

and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

11. Plaintiff is informed and believes that Emory Smith, Jr. (hereinafter sometimes referred to as "SMITH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, SMITH was the Deputy Solicitor General (DSG) of SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. SMITH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, SMITH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

12. Plaintiff is informed and believes that Joanne Lee (hereinafter sometimes referred to as "LEE"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, LEE was the Administrative Coordinator (AC) with SCAG's Solicitor General Division and as such was a supervisory agent/employee of SCAG. LEE is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for SCAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the

constitutional violations against the Plaintiff. Specifically, but not limited to, LEE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, SCAG, escape liability.

13. Plaintiff is informed and believes that David S. Jones (hereinafter sometimes referred to as "JONES"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, JONES was an Assistant Attorney General (AAG) with SCAG's Solicitor General Division. JONES is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, JONES acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

14. Plaintiff is informed and believes that T. Stephen Lynch (hereinafter sometimes referred to as "LYNCH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, LYNCH was the Deputy Attorney General (DAG) of SCAG's Legal Services Division and as such was a supervisory agent/employee of SCAG. LYNCH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the

constitutional violations against the Plaintiff. Specifically, but not limited to, LYNCH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

15. Plaintiff is informed and believes that Harley L. Kirkland (hereinafter sometimes referred to as "KIRKLAND"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, KIRKLAND was an Assistant Attorney General (AAG) with SCAG's Civil Litigation Division. KIRKLAND is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KIRKLAND acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

16. Plaintiff is informed and believes that Wesley Vorberger (hereinafter sometimes referred to as "VORBERGER"), is a citizen and resident of Greenville County, South Carolina. At all times relevant to this action, VORBERGER was an Assistant Attorney General (AAG) with SCAG. VORBERGER is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to,

8

VORBERGER acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

17. Plaintiff is informed and believes that Robert Kittle (hereinafter sometimes referred to as "KITTLE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, KITTLE was the Communications Director of SCAG and as such was a supervisory agent/employee of SCAG. KITTLE is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SCAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KITTLE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SCAG, escape liability.

## SLED DEFENDANTS

18. The following individual defendants listed in this section, along with KEEL, may hereinafter collectively be referred to as "SLED Defendants."

19. Plaintiff is informed and believes that Adam L. Whitsett (hereinafter sometimes referred to as "WHITSETT"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WHITSETT was General Counsel for SLED and as such was a supervisory agent/employee of SLED. WHITSETT is being sued in his individual capacity

under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WHITSETT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

20. Plaintiff is informed and believes that Frank O'Neal (hereinafter sometimes referred to as "ONEAL"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, ONEAL was a Major for SLED's Narcotics, Alcohol and Vice services and as such was a supervisory agent/employee of SLED. ONEAL is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, ONEAL acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

21. Plaintiff is informed and believes that Jason Wells (hereinafter sometimes referred to as "WELLS"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, WELLS was a Captain for SLED's Narcotics division and as such was a

supervisory agent/employee of SLED. WELLS is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.  Specifically, but not limited to, WELLS acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

22. Plaintiff is informed and believes that Glenn Wood (hereinafter sometimes referred to as "WOOD"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, WOOD was a Lieutenant for SLED and as such was a supervisory agent/employee of SLED. WOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff.  Specifically, but not limited to, WOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

23. Plaintiff is informed and believes that John Neale (hereinafter sometimes referred to as "NEALE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, NEALE was an agent/employee of SLED. NEALE is being sued in his individual

capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, NEALE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

24. Plaintiff is informed and believes that Rhett Holden (hereinafter sometimes referred to as "HOLDEN"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, HOLDEN was an agent/employee of SLED. HOLDEN is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for SLED and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, HOLDEN acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, SLED, escape liability.

## DAG DEFENDANTS

25. The following individual defendants listed in this section, along with WEATHERS, may hereinafter collectively be referred to as "DAG Defendants."

26. Plaintiff is informed and believes that Alden G. Terry (hereinafter sometimes referred to as "TERRY"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, TERRY was General Counsel for DAG and as such was a supervisory agent/employee of DAG. TERRY is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, TERRY acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

27. Plaintiff is informed and believes that Derek M. Underwood (hereinafter sometimes referred to as "UNDERWOOD"), is a citizen and resident of Newberry County, South Carolina. At all times relevant to this action, UNDERWOOD was the Assistant Commissioner of DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. UNDERWOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, UNDERWOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

28. Plaintiff is informed and believes that J. Clint Leach (hereinafter sometimes referred to as "LEACH"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, LEACH was the Assistant Commissioner of DAG's External Affairs & Economic Development Division and as such was a supervisory agent/employee of DAG. LEACH is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, LEACH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

29. Plaintiff is informed and believes that Aaron Wood (hereinafter sometimes referred to as "WOOD"), is a citizen and resident of McCormick County, South Carolina. At all times relevant to this action, WOOD was the Assistant Commissioner of DAG's Agency Operations Division and as such was a supervisory agent/employee of DAG. WOOD is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, WOOD acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights

and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

30. Plaintiff is informed and believes that John Stokes (hereinafter sometimes referred to as "STOKES"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, STOKES was a Program Manager of DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. STOKES is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DAG and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, STOKES acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DAG, escape liability.

31. Plaintiff is informed and believes that Vanessa Elsalah (hereinafter sometimes referred to as "ELSALAH"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, ELSALAH was the Coordinator of DAG's Hemp Program and as such was a supervisory agent/employee of DAG. ELSALAH is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, ELSALAH acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up

the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

32. Plaintiff is informed and believes that Brittany Jeffcoat (hereinafter sometimes referred to as "JEFFCOAT"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, JEFFCOAT was the Coordinator in DAG's Consumer Protection Division and as such was a supervisory agent/employee of DAG. JEFFCOAT is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, JEFFCOAT acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

33. Plaintiff is informed and believes that Eva Moore (hereinafter sometimes referred to as "MOORE"), is a citizen and resident of Richland County, South Carolina. At all times relevant to this action, MOORE was the Communications Director for DAG and as such was a supervisory agent/employee of DAG. MOORE is being sued in her individual capacity under 42 U.S.C. §§1983, *et seq*, for her conduct under the color of state law as a supervisory agent/employee for DAG and her efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, MOORE acted independently and/or

conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that her and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and her agency, DAG, escape liability.

## DCSO DEFENDANTS

34. The following individual defendants listed in this section, along with KNIGHT, may hereinafter collectively be referred to as "DCSO Defendants."

35. Plaintiff is informed and believes that Ray Dixson (hereinafter sometimes referred to as "DIXSON"), is a citizen and resident of Dorchester County, South Carolina. At all times relevant to this action, DIXSON was a Captain for DCSO and as such was a supervisory agent/employee of DCSO. DIXSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, DIXSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

36. Plaintiff is informed and believes that Frank Thompson (hereinafter sometimes referred to as "THOMPSON"), is a citizen and resident of Berkeley County, South Carolina. At all times relevant to this action, THOMPSON was a Lieutenant for DCSO and as such was a supervisory agent/employee of DCSO. THOMPSON is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory

agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, THOMPSON acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

37. Plaintiff is informed and believes that Robert Krutak (hereinafter sometimes referred to as "KRUTAK"), is a citizen and resident of Berkeley County, South Carolina. At all times relevant to this action, KRUTAK was a Deputy Sheriff for DCSO. KRUTAK is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for DCSO and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, KRUTAK acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, DCSO, escape liability.

## SC FORESTRY DEFENDANTS

38. Plaintiff is informed and believes that Jonathan Calore (hereinafter sometimes referred to as "CALORE"), is a citizen and resident of Lexington County, South Carolina. At all times relevant to this action, CALORE was a supervisory agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"), serving as the "Assistant LE Chief." CALORE is

being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as a supervisory agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, CALORE acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

39. Plaintiff is informed and believes that Charlie Scrubbs (hereinafter sometimes referred to as "Scrubbs"), is a citizen and resident of Charleston County, South Carolina. At all times relevant to this action, Scrubbs was an agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"). SCRUBBS is being sued in his individual capacity under 42 U.S.C. §§1983, *et seq*, for his conduct under the color of state law as an agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, SCRUBBS acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

40. Plaintiff is informed and believes that Wayne Eaddy (hereinafter sometimes referred to as "EADDY"), is a citizen and resident of Clarendon County, South Carolina. At all times relevant to this action, Scrubbs was an agent/employee with the S.C. Forestry Commission (hereinafter "FORESTRY"). EADDY is being sued in his individual capacity under 42 U.S.C.

§§1983, *et seq*, for his conduct under the color of state law as an agent/employee for FORESTRY and his efforts to act independently and/or conspire with others to violate the Plaintiff's constitutional rights and/or to cover-up the constitutional violations against the Plaintiff. Specifically, but not limited to, EADDY acted independently and/or conspired with the other defendants to violate the Plaintiff's constitutional rights, to cover-up the fact that his and/or the other defendants' conduct violated the Plaintiff's rights and/or denied the Plaintiff due process, attempting to help the other defendants and his agency, FORESTRY, escape liability.

## NATURE OF ACTION

41. This is an action for compensatory damages, punitive damages, attorneys' fees, costs and all other available damages proximately caused by the Defendants' deliberate indifference of and violation of the Plaintiff's established constitutional rights.

42. Plaintiff's claims are brought pursuant to 42 U.S.C.A. §§1983, *et seq*., and the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants. The Plaintiff's claims would specifically include, but not be limited to, claims under 42 U.S.C. §1983, §1985, §1986 & §1988(b).

43. During the time in question, the Plaintiff's Constitutional rights were well established and well known to the Defendants, including and not limited to, the Plaintiff's right to bodily integrity, right to be free from unreasonable searches and seizures, right to Due Process, and all other constitutional established and recognized as arising from the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

44. During the time in question , the Defendants had actual and/or constructive knowledge that their conduct posed an unreasonable risk of Constitutional injury to the Plaintiff and their responses with that knowledge were subjectively and objectively unreasonable regarding the offense(s) as alleged herein; and there is a causal link between their actions and the Constitutional injuries suffered by the Plaintiff.

## JURISDICTION/VENUE

45. Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

46. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) & (3).

## FACTUAL HISTORY AND TIMELINE
### The Hemp Farming Act and legalization in South Carolina

47. In late December 2018, the United States Congress passed a Federal Farm Bill that legalized the production of hemp, which is generally legally defined as the cannabis sativa L plant with THC levels below federally defined levels.

48. Following the passage of the Federal Farm Bill legalizing the production of hemp, the South Carolina General Assembly followed suit, with Gov. Henry McMaster signing the South Carolina Hemp Farming Act into law on or about March 28, 2019.

49. South Carolina's Hemp Farming Act ("the Act") is contained within S.C. Code §46-55-10 *et seq.* In passing the Act, the South Carolina General Assembly specifically found that "hemp has the potential to provide a cash crop for South Carolina's farmers with broad commercial application that will enhance the economic diversity and stability of our state's agricultural industry." *See* 2014 Act No.216, Section 1, findings.

50. In passing the Act, the South Carolina General Assembly provided statutory safeguards to protect South Carolina farmers. Specifically, the General Assembly codified these safeguards

via S.C. Code §46-55-40, Corrective Action Plans. That statute provides that South Carolina farmers "shall" be allowed "to conduct a corrective action plan if the commissioner, or his designee, determines that the licensee negligently violated" the Act.

51. Included in S.C. Code §46-55-40, are the following specific examples of violations for which a South Carolina farmer licensed under the Act shall be allowed to conduct a corrective action plan:

     a.  Failing to provide a legal description and global positioning coordinates of the land on which the licensee cultivates hemp;

     b.  Failing to obtain a proper license or other required authorization from the commissioner; or,

     c.  Producing Cannabis sativa L with more than the federally defined THC level for hemp.

*See* S.C. Code §46-55-40(A)(1)(a)(b)and(c).

52. The South Carolina General Assembly further safeguarded South Carolina farmers by specifically directing that the corrective plans described in S.C. Code §46-55-40 were "**the sole remedy for negligent violations of this chapter**, regulations promulgated pursuant to this chapter, or the state plan. A licensee who violates a provision of this chapter, regulations promulgated pursuant to this chapter, or the state plan **shall not be subject to any criminal or civil enforcement action**." S.C. Code §46-55-40(A)(3), emphasis added.

53. The South Carolina General Assembly directed WEATHERS and his agency to submit a "state plan" to the United States Department of Agriculture (USDA) within sixty (60) days of the effective date of the Act that proposed to regulate hemp production and was required to include "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

54. Pendarvis is informed and believes WEATHERS did **not** timely submit a "state plan" as required by the Act, no "state plan" was submitted by WEATHERS prior to the administrative and enforcement actions taken against him as detailed in this complaint, leading to state plan for South Carolina not being approved by USDA until March 31, 2020:



55. Both WILSON and KEEL and their agents/employees and agencies have been vehemently and publicly opposed to cannabis legalization efforts in South Carolina. This opposition is exemplified by a joint press conference featuring WILSON and KEEL in January 2019 at which WILSON referred to cannabis as "the most dangerous drug":



Attorney General Alan Wilson, State Law Enforcement Chief Mark Keel and the South Carolina Medical Association came out in opposition to legislation to legalize medical marijuana. Andrew Brown/Staff
BY ANDREW BROWN ABROWN@POSTANDCOURIER.COM

and through a June 14, 2021, letter KEEL sent to leadership of South Carolina's Behavioral

Health Services Association (BHSA) and Department of Alcohol and Other Drug Abuse

Services (DAODAS) voicing his "disappointment" they were not opposing legalization of

medical marijuana in South Carolina by stating:

> I have spent 43 years in law enforcement standing up for those who can't stand for themselves. This is why I have consistently voiced my concerns about legalizing marijuana in any form. Of course, I am compassionate to those who are suffering from

56. Pendarvis is informed and believes that ONEAL is a frequent speaker on behalf of KEEL and

SLED at various public and private functions with a presenter bio that states he "regularly

speaks and educates civic and community groups on the dangers of marijuana legalization and

the collateral damage it causes our country."

### The Plaintiff and the Hemp Farming Program

57. Subsequent to the passage of the Act and its signing into law, the DAG Defendants actively

promoted their Hemp Farming Program, going so far as to publish a logo for the South Carolina

program:



58. WEATHERS publicly pushed the Hemp Farming Program, stating in a press release on June

28, 2019, that "More hemp farmers means more opportunities to learn about hemp's long-term

potential for South Carolina agriculture. Agribusiness is South Carolina's largest industry, and

we welcome the chance to push it in new directions."

59. TERRY and ENSALAH both solicit speaking engagements as "speakers" listed on U.S. Hemp

expos website.

60. With signing into law of the Act, and through promotion by DAG Defendants, South Carolina went from approximately 256 acres of hemp being cultivated in 2018 to approximately 3,300 acres in 2019, with MOORE publicly stating on January 31, 2020 that the program had "grown from 20 farmers in 2018 to 114 permitted farmers and 43 processors at the end of the 2019 season" and later announcing on April 2, 2020 that "some 350 people applied to farm hemp in South Carolina this year."

61. Pendarvis is a fourth-generation farmer, having begun farming on family farmlands in 1997, farming over 2000 acres, primarily corn, cotton, peanuts and soybeans.

62. Pendarvis bought in to the DAG Defendants' promotion of hemp as a potential cash crop and applied to participate in the DAG Defendants hemp farming program, paying a $500 Dollar application fee and being issued License #1992 on or about May 1, 2019:



SOUTH CAROLINA DEPARTMENT OF AGRICULTURE
2019 Hemp Grower License

This is to certify that the licensee shown below has complied with Section 46-55-20 of the code of laws of South Carolina and is issued this license to engage in the growing of hemp on such approved growing locations on records with the Department during the calendar year shown above.

ISSUED   May 1st, 2019                    Trent Pendarvis

EXPIRES   December 31st, 2019            139 Gavins Road

LICENSE #   1992                          Harleyville, S.C 29488

Hugh E. Weathers, Commissioner

63. To obtain the license described above, Pendarvis was required to enter in to a "Hemp Farming Program Participation Agreement" (hereinafter "Agreement").

64. Any South Carolina farmer wishing to grow hemp had to enter in to the Agreement in order to be issued a hemp grower license.

65. Section VIII of the Agreement, titled "Plant Destruction," stated:

    a.  Permitted Grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:

       i.  Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis;

      ii.  Bearing off-label pesticide resideues (or believed by [DAG] to have had pesticides applied off-label), regardless of the source or cause of contamination; and

     iii.  Growing in an area that is not licensed by [DAG].

    b.  Notwithstanding the foregoing, Permitted Grower or processors may retain any hemp that tests between three-tenths of one percent to one percent delta-9 tetrahydrocannabinol on a dry weight basis and recondition the hemp product by grinding it with the stem and stalk. Hemp product must not exceed three-tenths of one percent delta-9 tetrahydrocannabinol.

66. The language of Section VIII quoted verbatim above is directly contradicted by the plain language of the statute, which specifically directs that for two of the three listed conditions for destruction from VIII, the corrective action plans as required under S.C. Code §46-55-40 **are the sole remedy**.

67. Notably, there is no language in the Agreement outlining the procedure by which DAG will enact enforcement, as was required in the Act. *See* 2019 Act No.14, Sec.2(A)(4). Specifically, despite the WEATHERS having sworn a duty to uphold and protect the Constitution of the United States and the State of South Carolina, nowhere in the Agreement is there any language explaining how a finding by DAG that a violation of the Act has occurred can be challenged, despite South Carolina's Constitution specifically enshrining that due process right:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights **except on due notice and an opportunity to be heard**; **nor shall he be subject to the same person for both prosecution and adjudication**; nor shall he be deprived of liberty or property unless by a mode of procedure described by the General Assembly, and **he shall have in all such instances the right to judicial review**.

South Carolina Constitution, Art.I, Sec.22, emphasis added.

68. Pendarvis is informed and believes that the SC General Assembly's requirements that certain violations of the Act be afforded corrective action plans, is based on the inevitable variable conditions encountered with farming, an occupation subject to unforeseen, unpredictable, and uncontrollable environmental and market conditions.

### Plaintiff's Hemp Crops

69. Unfortunately, upon receiving his license, Pendarvis was confronted with the fickle nature of farming. The very month Pendarvis was awarded his license, South Carolina publicly acknowledged his farmlands were facing drought conditions:



70. These drought conditions were so extreme, that they ultimately led to the USDA designating six (6) South Carolina counties as natural disaster areas, with WEATHERS publicly acknowledging on October 31, 2019 the "flash drought" that had struck many South Carolina farmers and warning "we may be seeing its effects for a long time."

71. Despite the tough hand Mother Nature dealt farmers that year, Pendarvis was able to successfully cultivate a healthy hemp crop:

27



**Allegations of Plaintiff Violating Hemp Agreement**

72. On July 30, 2019, ENSALAH visited Pendarvis' Dorchester County property for a farm visit pursuant to Pendarvis' participation in the Hemp Farming Program. While ENSALAH was on site, it was discovered that Pendarvis' had planted his Dorchester County crop on coordinates other than those that had been submitted to DAG. Pendarvis is informed and believes he sent the correct coordinates via a text message during or immediately following ENSALAH's visit.

73. On July 31, 2019, at 2:52 p.m., UNDERWOOD sent Pendarvis an email, courtesy copying TERRY, titled "Narrative of Hemp Growing," marking the importance as "high."



74. Pendarvis responded back that afternoon, with the following email:



From: Trent Pendarvis <trentpendarvis@gmail.com>
Sent: Wednesday, July 31, 2019 4:23 PM
To: Underwood, Derek <dunder@scda.sc.gov>
Subject: [External] Re: FW: Narrative of hemp growing

Due to the extensive drought in May and overabundance of rain in June, I was prohibited to plant the fields that were previously reported with GPS coordinates. I didn't realize the field was not reported since multiple fields were listed in case weather events delayed planting and thought everything would be finalized during inspection. It was an oversight for not reporting the change to you. The additional field is located in a 2 mile radius of existing fields and did not increase the acreage approved.

Please include the following location to my application:

33 13 60 N
80 29 52 W

Thank you,
Trent Pendarvis

75. Apparently, that same day, UNDERWOOD spoke with Pendarvis on the phone and told Pendarvis that he would need to submit an official amendment form for review.

76. The next day, Thursday, August 1, 2019, Pendarvis submitted a "Hemp Farming Program Acreage Amendment Application":



77. Via email dated that same Thursday, August 1, 2019, at 11:58 a.m., and which was courtesy copied to ELSALAH and TERRY, UNDERWOOD told Pendarvis his case would be reviewed "with our Attorney to determine if a willful violation of the grower's agreement is present" and **"once we make a final decision, we will be in touch"**:



78. Four days later, UNDERWOOD sent the following August 5th email to WELLS, courtesy copying ELSALAH, TERRY and ONEAL, at 11:51 a.m.:



79. That first August 5th email was immediately followed by a 12:30 p.m. email from UNDERWOOD, sent to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH, with the subject heading "Memo to Enact Enforcement," importance labeled "high," and containing the attachment "Memo to SLED 8-5-2019 Pendarvis.pdf":



| From: | Underwood, Derek <dunder@scda.sc.gov> |
|---|---|
| Sent: | Monday, August 5, 2019 12:30 PM |
| To: | jwells@sled.sc.gov; foneal@sled.sc.gov |
| Cc: | Dalton, Alden; Elsalah, Vanessa |
| Subject: | Memo to enact enforcement |
| Attachments: | Memo to SLED 8-5-2019 Pendarvis.pdf |
| | |
| Importance: | High |

Attached.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

80. The memo attached to the August 5, 2019, email sent at 12:30 p.m. was:

**South Carolina**
**DEPARTMENT OF AGRICULTURE**
**CONSUMER PROTECTION DIVISION**
123 Ballard Court, West Columbia, SC 29172

Hugh E. Weathers, Commissioner

MEMORANDUM

To:     Lt. Jason D. Wells, Narcotics
        South Carolina Law Enforcement Div.

From:   Derek M. Underwood, Assistant Commissioner
        Consumer Protection Division, SCDA

Date:   August 5, 2019

RE: Trent Pendarvis (permit # 1992) violation of Hemp Agreement

It has come to our attention that Mr. Trent Padarvis is unlawfully growing Hemp on acreage that was not permitted by the SCDA. This is a willful violation of the Hemp Farming Act which requires a licensed grower only grow on acreage submitted and approved in advance by SCDA.

This memo is to request SLED enact enforcement of this violation by Mr. Trent Pedarvis.

81. Apparently, the August 5th memo went through a revision process, leading to another email being sent by UNDERWOOD on August 6, 2019, at 9:45 a.m., to WELLS and courtesy copied to ONEAL, TERRY and WEATHERS. This email is titled "Letter to enact enforcement Pendarvis Hemp," was designated "high" importance and had attached "SCDA SLED Memo 8-6-2019 Pendarvis.pdf," wherein UNDERWOOD informed WELLS that he was attaching "the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992)":

31

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, August 6, 2019 9:45 AM |
| **To:** | jwells@sled.sc.gov |
| **Cc:** | foneal@sled.sc.gov; Dalton, Alden; Weathers, Hugh; Elsalah, Vanessa |
| **Subject:** | Letter to enact enforcement Pendarvis Hemp |
| **Attachments:** | SCDA SLED Memo 8-6-2019 Pendarvis.pdf |
| | |
| **Importance:** | High |

Lt. Wells,

Attached is the memo regarding willful actions by Mr. Trent Pendarvis (permit #1992).

V/R,

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

82. The memo attached to the August 6, 2019, email described above appears to be dated August 5th (despite being labeled as 8-6-2019 in the attachment line of the email) and has been edited to include slightly different language and more information regarding Pendarvis' alleged "willful violation" of the Hemp Farming Program:



83. Within two (2) days, UNDERWOOD was asking the SLED Defendants for an update, sending this August 8, 2019, 11:48 a.m. email, importance designated "high," to WELLS and courtesy copying ONEAL, TERRY, WEATHERS and ELSALAH:



84. ONEAL responded, replying that "we are having difficulty in what to address **with so many gray areas concerning enforcement**…We are having to get AG opinions along the way and **the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly**":

From: Oneal, Frank <foneal@sled.sc.gov>
Sent: Thursday, August 8, 2019 1:00 PM
To: Underwood, Derek <dunder@scda.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
Cc: Terry, Alden <aterry@scda.sc.gov>; Weathers, Hugh <hweathe@scda.sc.gov>; Elsalah, Vanessa <velsalah@scda.sc.gov>
Subject: RE: [EXTERNAL] Re: Letter to enact enforcement Pendarvis Hemp
Not yet- we are having difficulty in what to address with so many gray areas concerning enforcement. Unlike Kentucky, we don't really have comprehensive regulation that addresses all of the possible concerns. We are having to get AG opinions along the way and the last thing we want to do is an action that will be perceived in a negative light by the media or general assembly.

85. Completely absent from the August 8th email above are any concerns about the due process rights of Pendarvis. The SLED Defendants concerns are that they may be perceived "**in a negative light by the media or the general assembly**," despite the specific constitutional rights implicated in any enforcement action and the SLED Defendants having taken oaths to protect, preserve and defend those constitutional rights.

86. UNDERWOOD replied all to that email from ONEAL, letting the SLED Defendants know DAG would not approve Pendarvis' amendment application so there was no "deadline" to act and to let him know "what we need to do to help."

> On Aug 8, 2019, at 4:43 PM, Underwood, Derek <dunder@scda.sc.gov> wrote:
> Thanks for update.
> We will not issue an amendment for acreage with mature plants or any new acreage where hemp is currently growing so there is no quote "deadline" to act.
> Let me know what we need to do to help.
> Derek

**August 8, 2019 SCAG Opinion**

87. The SCAG opinion ONEAL's August 8th email referenced, was requested on behalf of the SLED Defendants by WHITSETT via an August 6, 2019, email to JONES, seeking **"specific guidance…on the proper procedure in this matter"**:

> **From:** Whitsett, Adam [mailto:awhitsett@sled.sc.gov]
> **Sent:** Tuesday, August 06, 2019 5:29 PM
> **To:** David Jones
> **Subject:** Opinion Request
>
> David:
>
> As discussed, SLED received the attached request from the South Carolina Department of Agriculture documenting a willful violation of the South Carolina's Hemp Farming Act. As you can see, this request is for SLED to "enact enforcement" of this situation. In addition, S.C. Code Ann. § 46-55-20(A)(1) provides that it is unlawful for a person to cultivate, handle, or process hemp in this State without a hemp license issued by the department". However, there is no specific direction as to the process or procedure to have the illegally grown hemp, which is contraband per se, seized or destroyed. Accordingly, SLED would greatly appreciate any specific guidance you can provide on the proper procedure in this matter.
>
> I will touch base tomorrow to further discuss.
>
> Regards,
> Adam

88. That email was forwarded by JONES to COOK the next morning:

From: David Jones
To: Bob Cook
Subject: FW: Opinion Request
Date: Wednesday, August 7, 2019 8:30:29 AM
Attachments: new doc 2019-08-05 13.25.10.pdf

Adam's request.

David S. Jones
Assistant Attorney General
Office of the Attorney General

…with Cook promptly replying about how the Act is an "ultra murky" statute, that gives "no direction whatever to law enforcement":

From: Bob Cook
To: David Jones
Subject: RE: Opinion Request
Date: Wednesday, August 7, 2019 8:36:00 AM

I think a compare and contrast with section -2710 is in order. That provision directs law enforcement to seize and take to magistrate. Another example of the "ultra murky" statute. It gives no direction whatever to law enforcement.

Robert D. Cook
Solicitor General
S.C. Attorney General's Office

89. JONES later provides COOK with draft language via August 7, 2019, 5:10 p.m. email, noting that "all the constitutional stuff is ripped from a 2017 opinion I wrote on seizures" and that "**if we want to talk about due process, there it is**":

From: David Jones
To: Bob Cook
Subject: Draft op: Whitsett: Illegal hemp seizure
Date: Wednesday, August 7, 2019 5:10:32 PM
Attachments: Whitsett. Illegal Hemp Seizure (02061200xD2C78).DOCX

All the constitutional stuff is ripped from a 2017 opinion I wrote on seizures. Anything that is superfluous or redundant I'm happy to remove. But if we want to talk about due process, there it is.

David S. Jones
Assistant Attorney General

90. On August 8, 2019, after getting COOK's approval that it was "good to go," JONES forwards the final draft to LEE, directing her to tag it as "Constitutional law" with the description "**An**

**opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act**
**with respect to hemp grown in violation of the Act**":

| | |
|---|---|
| **From:** | David Jones |
| **To:** | Joanne Lee |
| **Subject:** | FW: Draft op: Whitsett: Illegal hemp seizure |
| **Date:** | Thursday, August 8, 2019 9:51:24 AM |
| **Attachments:** | Whitsett. Illegal Hemp Seizure (02061200xD2C78).DOCX |

Joanne, please prepare and print the attached op for signature.

Description: "An opinion on the appropriate procedure to pursue enforcement of the Hemp Farming Act with respect to hemp grown in violation of the Act."

Tags: Constitutional law

David S. Jones
Assistant Attorney General

91. The opinion finalized by JONES and COOK on behalf of SCAG on August 8, 2019 (hereinafter "August 8th Op.") was addressed to WHITSETT and specifically provided the "specific guidance" WHITSETT had requested "on the proper procedure" when enforcing a "willful violation" of the hemp farming program.

92. The specific guidance on proper procedure contained within the August 8th Op. was specifically, but not limited to:

**Law/Analysis:**

It is the opinion of this Office that in the absence of legislative direction, SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution. *See id.*

**Seizures Under the South Carolina Hemp Farming Act**

The question presented in your letter does raise a novel issue, however. Numerous prior opinions of this Office have addressed statutory schemes wherein the General Assembly expressly set out procedures for the seizures of contraband. *See, e.g., Op. S.C. Att'y Gen.*, 2017 WL 5053042 (October 24, 2017). However, no such guidance or instructions appear in the Hemp Farming Act. Our Office has concluded that hemp grown in violation of the Hemp Farming Act is contraband *per se* under the Act, *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019), but the Act is silent on the procedures the State must use to enforce that law. *See* S.C. Code Ann. § 46-55-10 et seq. (Supp. 2019).

However, the Hemp Farming Act contains no comparable statutory directions for the seizure of contraband product. *See* S.C. Code Ann. § 46-55-10 et seq. (Supp. 2019). Of course, due process would still require an "opportunity for an innocent owner to come forward and show, if he can, why the res should not be forfeited and disposed of as provided for by law." *State v. 192 Coin–Operated Video Game Machines*, 338 S.C. 176, 197, 525 S.E.2d 872, 883 (2000) (citing *Moore v. Timmerman*, 276 S.C. 104, 109, 276 S.E.2d 290, 293 (1981)). Given the absence of any legislative direction in the Hemp Farming Act, we advise that the prudent course of action would be to provide that opportunity in a hearing. We hope that this also will lead to judicial clarification of some of the many questions created as a result of the Hemp Farming Act.

In conclusion, it is the opinion of this Office that in the absence of legislative direction, SLED should seek judicial authorization for the seizure of illegally-grown hemp in order to ensure that the grower receives due process consistent with the Constitutions of the United States and the State of South Carolina. *See, e.g., State v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000). We advise that this authorization be sought with notice to the grower and an opportunity for them to be heard in a hearing in an abundance of caution. *See id.* Our opinion here has been expedited, and it should be read in the context of that opinion

Our Office acknowledged recently that "the Hemp Farming Act of 2019 was not drafted with the greatest of clarity and needs legislative or judicial clarification." *Op. S.C. Att'y Gen.*, 2019 WL 3243864 (July 10, 2019). In this instance you have identified what appears to be a gap, in that the Act requires that a willful violation of state law in connection with cultivated hemp must be reported to SLED, but the Act does not specify what procedures SLED must follow to enforce the law in the situation you describe in your letter. S.C. Code Ann. § 46-55-40(B) (Supp. 2019). This is yet another example of the need for legislative or judicial direction regarding the implementation of South Carolina's industrial hemp program. Therefore our Office advises that SLED proceed with the utmost care to fully ensure that the grower and all interested parties receive due process in any enforcement action.

93. In addition to the "specific guidance" on "proper procedure" for enforcing willful violations of the hemp farming program above, the August 8ᵗʰ Op. concluded by pointing out the DAG Defendants need to promulgate regulations to address some of the numerous issues that had been raised:

Moreover, we emphasize again the importance of the General Assembly revisiting the Act to address the numerous issues recognized in this, as well as our July 10 opinion. In addition, as the agency designated by the General Assembly to regulate hemp, the Department of Agriculture, working closely with SLED, may wish to promulgate regulations to address the omissions identified in these opinions.

94. Pendarvis is informed and believes that the regulations suggested by SCAG should have been covered within the "state plan" WEATHERS had been tasked by the General Assembly to promulgate and submit to the USDA within sixty (60) days of the Act's effective date (as described above), which WEATHERS and the DAG Defendants failed to do. This is evidenced by the "state plan" which was ultimately submitted and approved **after** the actions taken by the Defendants to arrest and destroy Pendarvis' hemp crop containing an entire section on "Enforcement," detailing "Adjudicatory Proceedings" in which "the Commissioner shall notify the Permittee of the alleged violation as well as an opportunity to respond therein, by certified mail, prior to any scheduled hearing date" (*see* State Plan, Sec.17(1(b)); "no penalty shall be assessed, nor may any permit be suspended or revoked by the Commissioner prior to the holding on an adjudicatory hearing" (Sec.17(1(d)); requiring the adjudicatory hearing to be conducted pursuant to the S.C. Administrative Procedures Act (Sec.17(1(e)); and providing an appeals process (Sec.17(2)).

**Pre-litigation Known Conduct After the August 8th Op. leading to Arrest & Destruction**

95. On August 28, 2019, while NEALE was at Pendarvis' farm collecting samples, Pendarvis informed NEALE that there were two additional acres he had used for his allotment in Marion Co., subsequently emailing to the DAG Defendants a 2nd Acreage Amendment Application at approximately 10:38 a.m. (the acreage leading to this 2nd amendment application hereinafter referred to as "Marion Co. crop"), providing the following location:

96. On Thursday August 29, 2019 at 11:53 a.m., UNDERWOOD sent Pendarvis an email that was

courtesy copied to ELSALAH and TERRY.

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:53 AM |
| **To:** | trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden; Hemp, SCDA |
| **Subject:** | SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |
| **Importance:** | High |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

August 28, 2019

Mr. Trent Pendarvis
967 West Main Street
Harleysville, SC 29448

RE: Trent Pendarvis (permit # 1992) violation of Hemp Farming Program

Mr. Pendarvis,

It has come to our attention that you are unlawfully growing Hemp on acreage that is not on record with the SCDA. This is a willful violation of the Hemp Farming Program which requires a licensed grower to provide the SCDA with a legal description and global positioning coordinates of the land on which the licensee seeks to cultivate hemp.

Amendments submitted on 8-01-2019 and *the recent* 8-28-2019 for adding acreage where hemp has already been planted, cultivated and matured will not be processed by the SCDA. Therefore, this crop is considered in violation of S.C. Code Ann. Section 46-55-40(B).

SCDA does not believe this violation to be negligent or an oversight on your part, but instead views this conduct as willful.

This letter serves as the official response to your actions and SCDA has notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B).

If you have any questions or would like additional information, please do not hesitate to contact me at dunder@scda.sc.gov or 803-737-9702.

This letter has also been mailed "certified" to your attention.

Derek M. Underwood
*Assistant Commissioner, Consumer Protection Division*

97. The attachment to the Thursday August 29, 2019, email above, was the following memo:



98. According to a written statement that UNDERWOOD emailed to WELLS (never identified or produced by the SLED Defendants in either of the state civil cases or the state criminal prosecution), Pendarvis called UNDERWOOD "several times" over the weekend following that Thursday, August 29, 2019, email, but UNDERWOOD "waited until first of the week to return his call." UNDERWOOD described that phone call as:

> During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.
>
> After a few more exchanges repeating the same questions, I ended the call.

99. On September 6, 2019, despite the communications above, JEFFCOAT began emailing
Pendarvis asking him about "the two additional acres you wish to amend to your license":

**From:** Jeffcoat, Brittany
**Sent:** Friday, September 6, 2019 12:48 PM
**To:** trentpendarvis@gmail.com
**Subject:** SCDA Hemp

Mr. Pendarvis,
We spoke on August 28th about two additional acres you wish to amend to your license. In order for us to maintain an
accurate record for your location please reply back with coordinates of those acres by the end of today.

100.    On September 10, 2019, UNDERWOOD joined the effort, emailing Pendarvis,
JEFFCOAT, ELSALAH and TERRY at 4:52 p.m.:

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Tuesday, September 10, 2019 4:52 PM |
| **To:** | Jeffcoat, Brittany; trentpendarvis@gmail.com |
| **Cc:** | Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | RE: SCDA Hemp |
| | |
| **Importance:** | High |

Mr. Pendarvis,

Your cooperation in this matter is of upmost importance.

This is a direct inquiry based on your previous call on 8-28-2019 at 10:38AM about amending another 2 acres where
Hemp is being grown by you.

Time is of the essence.

101.    Less than five minutes later, JEFFCOAT sends yet another email to Pendarvis, again
courtesy copying UNDERWOOD, ELSALAH and TERRY:

| | |
|---|---|
| **From:** | Jeffcoat, Brittany <bjeffcoat@scda.sc.gov> |
| **Sent:** | Tuesday, September 10, 2019 4:45 PM |
| **To:** | trentpendarvis@gmail.com |
| **Cc:** | Underwood, Derek; Elsalah, Vanessa; Dalton, Alden |
| **Subject:** | FW: SCDA Hemp |

Good Afternoon Mr. Pendarvis,
I am reaching out again requesting you please provided the location of the additional two acres you wished to amend to
your license. Please respond by the end of the business day tomorrow, Wednesday, September 11th.

41

102.    The next day, September 11, 2019, TERRY emails Pendarvis, courtesy copying UNDERWOOD, JEFFCOAT and ELSALAH and specifically states DAG is being asked to obtain information by SLED:

| From: | Dalton, Alden <adalton@scda.sc.gov> |
|---|---|
| Sent: | Wednesday, September 11, 2019 10:35 AM |
| To: | Underwood, Derek; Jeffcoat, Brittany; trentpendarvis@gmail.com |
| Cc: | Elsalah, Vanessa |
| Subject: | RE: SCDA Hemp |

Mr. Pendarvis,

I just tried to give you a call but I got your voicemail. I am reaching out because SCDA has been asking by SLED to provide them with the location of all places where you are growing hemp. As we understand, you are currently growing on two more additional areas which are not licensed by or on record with SCDA. Please provide the location of these additional two acres (and any other unauthorized or unrecorded growing locations) by close of business today, Wednesday, September 11th. Please note that while SCDA cannot influence the SLED proceedings, your cooperation with SCDA will impact your future participation in the SCDA program. Please give me a call if you have any questions.

103.    Having received the conflicting communications described above, Pendarvis had already responded to TERRY's September 11th 10:35 a.m. email by resubmitting the 2nd Acreage Amendment Application via email dated September 11, 2019, 8:12 a.m. and noting it was the same application "sent on August 28th for Trent Pendarvis":

**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:12 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Fwd: FW: Scanned from a Xerox multifunction device

See Attached Acreage Amendment that was sent on August 28th for Trent Pendarvis.

and immediately following that email with:

**From:** Trent Pendarvis <trentpendarvis@gmail.com>
**Sent:** Wednesday, September 11, 2019 8:14 AM
**To:** Hemp, SCDA <scda_hemp@scda.sc.gov>
**Subject:** [External] Hemp

If any further information is needed, please call my cell 843-███████

104.    Sometime on the morning of September 19, 2019 (presumably before 11:45 a.m.), NEALE
        obtained Arrest Warrant 2019A1810300867 for a "Miscellaneous/General Sessions
        Misdemeanor Offense where no punishment provided by statute" from Dorchester County
        Magistrate Judge Ryan D. Templeton.    The warranted was prepared by NEALE with
        assistance/review from WOOD. The affidavit portion of that warrant referenced an "attached
        affidavit." That affidavit was executed by NEALE and describes the offense as "Unlawful
        Cultivation of Hemp – 1st Offense (CDR CODE 3554) CODE SECTION: 46-55-20(A)(1)"
        and then contains the following "probable cause" sworn testimony by NEALE:

> *I further state that there is probable cause to believe that the defendant named above did commit
> the crime set forth and that probable cause is based on the following facts:*
>
> On and before August 28, 2019, one John Trenton PENDARVIS, did unlawfully cultivate hemp.  This violation taking place at
> Maple Hill Road (33° 21' 82" N, 80° 47' 30" W) located in or near Harleyville, in Dorchester County, South Carolina.  This being
> in violation of Section 46-55-20(A)(1), South Carolina Code of Laws, 1976, as amended.

> On July 30, 2019, the South Carolina Department of Agriculture (SCDA) observed mature hemp plants growing on an unlicensed
> site located on Maple Hill Road.  Following the visit PENDARVIS applied for an amendment to his original application to change
> his growing location to the Maple Hill Road site. The SCDA determined PENDARVIS' actions willfully violated the Hemp
> Farming Act, because prior approval of the new growing location was not obtained before the hemp was grown on the Maple Hill
> Road site and denied the amendment application.  The SCDA notified SLED that PENDARVIS was willfully and unlawfully
> violating the Hemp Farming Act and requested a criminal investigation.  On August 28, 2019, the affiant took samples of the
> plants at the Maple Hill Road site confirming hemp was growing at the location.

105.    Notably absent from the warrant or affidavit is any notice that the SLED defendants were
        going to seize and destroy Pendarvis' hemp crop upon serving the requested arrest warrant **or**
        that the SLED defendants had previously attempted to obtain judicial authorization for seizure
        and destruction and that judicial authorization had been denied. WHITSETT has verified under
        oath that information was not relayed to Magistrate Judge Templeton.

**Arrest & Destruction of Dorchester County Hemp Crop**

106.    On September 19, 2019, at approximately 11:45 a.m., numerous Defendants showed up at Pendarvis' farm in Dorchester County. Pendarvis is informed and believes that specific individual defendants present at his Dorchester County farm that day were ONEAL, NEALE, WOOD, HOLDEN, STOKES, DIXSON, THOMPSON, KRUTAK, SCRUBBS and EADDY, but he believes there may have been other individuals also present. At least one defendant, THOMPSON, was outfitted as though they were serving a high-risk warrant on a violent criminal:



107.    Interactions between Pendarvis and some of the defendants at his Dorchester County farm on September 19, 2019, are memorialized via a body-worn camera (BWC) video that has been identified by SLED as being WOOD's BWC.

108.    That video shows a SLED Agent (believed to be NEALE), ONEAL and WOOD (not visible, but present via audio since it is his BWC) having the following exchange with Pendarvis beginning at the 11:49:00 timestamp and showing Pendarvis refusing to consent to the destruction of his hemp crop and instead requesting due process (to call his lawyer):

-NEALE:        We have got to something with this. So are you good with us, cutting it down or…

-PENDARVIS:   I'd rather you talk to my lawyer first.

-NEALE:        Ok.

-ONEAL:        Who's your lawyer?

-PENDARVIS:   I'll get ahold of Mr. Charles Williams.

-ONEAL:        Ok. (*looking at NEALE and nodding*) Go ahead then.



"Go ahead then." - SLED Maj. Frank O'Neal

-NEALE:        Well, right now (*walking over to Pendarvis and grabbing his arm*) we are going to place you under arrest for growing hemp without a license.

-ONEAL:        Cultivating.

-PENDARVIS:   For what?

-NEALE:        Because this is not – this is an unlawful –

-ONEAL:        We'll serve the warrant here in just a minute. Tell you about – what's all involved.

109.    At 11:50:21, as NEALE and ONEAL are cuffing his hands behind his back, Pendarvis asks

for due process a second time:

-PENDARVIS:   Can I call my lawyer before y'all –

-WOOD:    **Yes, sir**. **Absolutely**. Let them finish getting your knives and stuff. Then they'll take those cuffs lose for a second and **we'll let you make that telephone call**.

*(ONEAL approaches WOOD and motions for him to follow)*

-ONEAL:    Hey, let me talk to you for a second.

*ONEAL and WOOD walk away from Pendarvis and WOOD's BWC mic is turned off, after which there are no more assurances that Pendarvis will be allowed a call while on the scene. Pendarvis is informed and believes STOKES (seen in image below) is standing in proximity to ONEAL and WOOD when the "unrecorded" conversation takes place, after which no more assurances of phone calls on site are made.*



At 11:52:11, after the mic cut-off conversation, Pendarvis continues to request due process by asking to be able to contact his lawyer **before** the hemp crop is destroyed:

-PENDARVIS:    I mean, I can't call my lawyer before y'all mess with it –

-ONEAL:    No, sir. You can call you lawyer down at the jail. We gonna cut it regardless. Your lawyer can't stop us from cutting it. It's growing in an unlawful location.

At 11:54:49:

-PENDARVIS:    My lawyer  can't talk to y'all before y'all destroy it?—

-WOOD:    We came here to handle this issue –

-PENDARVIS:    I – I – I…I think my lawyer can explain my situation with the paperwork I got.

At 11:54:49:

46

-WOOD:           I know the Department of Agriculture sent you a letter several weeks ago.

-PENDARVIS:    And they told me to wait and they'd get back with me. I never heard anything from them. I asked him then, did I need to get my attorney to contact him. He said, "you wait and I'll call you back." So…that's what I did.

-WOOD:           Yes, sir.

-PENDARVIS:    But if I'd have known different, I could've got my attorney to contact y'all ahead of time.

At 11:55:38, as NEALE, ONEAL, STOKES and THOMPSON look on:



-WOOD:           I mean, they turned it over to us to handle –

-PENDARVIS:    Well, that's what I'm asking. Can I call my lawyer and let y'all talk to him now.

-WOOD:           (*as ONEAL shakes his head in the background*) We've got a directive to come here today.

-ONEAL:          We'll talk to your lawyer later.

-PENDARVIS:    I mean – How y'all gonna destroy my whole crop?

At 11:56:19, as NEALE, WOOD, STOKES and THOMPSON look on:



-ONEAL:          Well, we're out here because the Department of Ag called us out here.

At 11:57:16, as NEALE, WOOD, STOKES and THOMPSON look on:



-ONEAL:          We'll discuss the details with you later, we've got – we've got what the Department told us and – and now what you're telling us. We'll be glad to talk to you with your lawyer –

-PENDARVIS:      Well that's what I don't understand. How can y'all – why are y'all gonna destroy before my attorney can get with y'all and – and they – with the Department?

-ONEAL:          Let me read this warrant to you, sir.

At 12:00:51:

-PENDARVIS:      I really think I should be able to talk to my attorney before y'all destroy it

-WOOD:           This is where we're at, sir.

-PENDARVIS:      I mean, I asked the lady that the other say. And she told me no, that she would get back with me.

-WOOD:           We've been in contact with the Department of Agriculture and they are – uh – in line and lined up with everything we're here for.

110.    All told, Pendarvis requested due process **before** his hemp crop was destroyed at least seven (7) times (as memorialized on WOOD's BWC video). All those requests for due process by Pendarvis were ignored by the Defendants on the scene.

111.    Pendarvis' was transported by KRUTAK to the Dorchester County Detention Center where he was booked.

112.    While Pendarvis was being transported to the detention center, the on-scene Defendants proceeded to destroy his hemp crop by bushhogging Pendarvis' fields with SC Forestry equipment:



turning thriving fields of hemp:



into barren lots like this:



113.    Pendarvis is informed and believes that FORESTRY agents/employees SCRUBBS and

EADDY assisted with the destruction of his hemp crop, using FORESTRY equipment.

114.    Before taking and destroying Pendarvis' hemp crop without providing him due process,

the on-scene Defendants made sure to get videos and selfies to memorialize their "crime-

fighting" work:



115.    On September 20, 2019, both KEEL and WEATHERS publicized written statements to the

media "FOR IMMEDIATE RELEASE" on Pendarvis' arrest:

---

[1] Plaintiff is unsure of the identity of the person pictured in the bed of the truck taking photo/video,
but is informed and believes that the person in the four (4) selfies is STOKES, who was specifically
identified by NEALE as being "Other Personnel" involved in the SLED "Report of Investigation."





116.    Also on September 20, 2019, counsel retained to defend Pendarvis on the criminal charges

sent evidence preservation correspondence to KEEL which requested the preservation and

production of the following:

- Any and all surveillance video and/or photographs taken from Pendarvis Farms located in Harleyville, South Carolina;
- Any and all video and/or photographs taken before or after the crop located in Harleyville, South Carolina was destroyed;
- The names and addresses of agents working and on location during the arrest of John Trenton Pendarvis and the destruction of his crop on September 19, 2019;
- Any and all communications including emails, phone calls and text messages between South Carolina Law Enforcement Division and South Carolina Department of Agriculture regarding John Trenton Pendarvis and/or Pendarvis Farms;

If you fail to preserve and maintain this evidence, we will seek sanctions provided under South Carolina law including spoliation of evidence. It is necessary to preserve all the requested evidence in order for Mr. Pendarvis to be able to make a determination about the culpability and punitive exposure of any party to a potential action.

Please forward copies of the preserved information to our attention as well as documentation indicating that the above information has likewise been preserved. If there are any fees associated, please let us know. Should you have any questions, please do not hesitate to contact my office.

117.   Via correspondence dated November 4, 2019, WHITSETT responded to Pendarvis'

counsel's September 20, 2019, correspondence:

Dear Attorney Hutto,

I write today in response to your previous FOIA requests that have been assigned the above SLED FOIA Tracking number. Attached you will find all of the non-exempt public records in SLED's possession that are responsive to your request at this time. Be advised that SLED's criminal investigation into this matter remains ongoing at this time. As such, in accordance with FOIA, any and all additional records in SLED's possession that may be responsive to your request are records and other information compiled for law enforcement purposes the production of which at this time would interfere with SLED's prospective law enforcement proceedings in this matter, any forthcoming prosecution that may be determined warranted by the appropriate prosecutor, and the constitutional guarantees associated therewith. Accordingly, the records sought in your request are specifically exempt from disclosure at this time pursuant to S.C. Code Ann. § 30-4-40(a)(3)(A). In addition, some of the materials sought are not "public records" as defined by S.C. Code Ann. § 30-4-20(c). Further, some of the materials are additionally exempt pursuant to S.C. Code Ann. § 30-4-40(a)(2), (a)(3)(B), (a)(3)(C), (a)(3)(D), (a)(3)(E), (a)(4), (a)(7), and (a)(15).

If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Adam L. Whitsett
SLED General Counsel

118.   Via correspondence dated January 22, 2020, the First Circuit Solicitor's Office produced

Rule 5/*Brady* material to Pendarvis' attorney on the criminal case.

119.    Of note, in neither of the two responses above, did the SLED defendants identify and/or produce any AG opinions requested or produced **after** the August 8th AG Op. or any communications with Chief Administrative Judge for the First Circuit.

**Pre-litigation Known Conduct – Marion County Case**

120.    On or about September 25, 2019, Pendarvis' counsel became aware that the SLED and DAG Defendants intended to conduct the same seizure and destruction action on two (2) acres of his hemp allotment that he had planted in Marion County on land owned by a friend, Lawton Drew. These were the two acres subject to the 2nd Acreage Amendment Application that Pendarvis had emailed DAG on August 28, 2019 and was subsequently emailed numerous times about in early September by DAG Defendants, before resending to DAG via email on September 11, 2019 (hereinafter "Marion crop").

121.    Subsequent to learning that the SLED and DAG Defendants intended to seize and destroy the Marion crop, on September 26, 2019, Pendarvis' attorneys filed a *Petition for an Ex Parte Temporary Restraining Order, Motion for Preliminary Injunction, and Complaint for Declaratory and Injunctive Relief* in the Marion County Court of Common Pleas (hereinafter "Marion Case," *see* C/A No.: 2019-CP-33-00675).

122.    On September 26, 2019, the Marion County Court of Common Pleas, through order issued by the Hon. William H. Seals, Jr., temporarily restrained and issued a preliminary injunction against SLED and DAG, temporarily restraining and enjoining on a preliminary basis SLED and DAG from entering onto the property "for the purposes of destroying the hemp crop planted thereon." That Order specifically ordered that the parties would be given an opportunity to be heard in a hearing on the merits at a later date.

123.    Subsequent to the above, Pendarvis' attorneys began communicating with both WHITSETT and TERRY the filings, the Court's order and trying to coordinate dates for a hearing.

124.    On October 7, 2016, SLED filed *Response in Opposition Ex Parte Temporary Order and Preliminary Injunction and Request to Dissolve Such Order*. SLED devoted an entire page in that filing to allegations that the Marion hemp crop was "too hot" (i.e., had tested above 0.03% delta-9 dry weight). *See* p.6, October 7, 2019, SLED Response, Marion case.

125.    Nowhere in their October 7, 2016, filing did SLED mention a) that no one had ever noticed Pendarvis about any of his hemp being "too hot," or b) that the very statute and participation agreement SLED was citing as justification for their enforcement action specifically allows that hemp testing too hot can be "reconditioned." *See* S.C. Code §46-55-40(A)(1-4) and Sec. XIII(b) of Hemp Participation Agreement.

126.    On October 8, 2019, Pendarvis filed a *Supplemental Memorandum* in the Marion case. In that filing, Pendarvis argued he had never been given any notice about any of his crop being "too hot," pointing out the SLED lab report attached to SLED's response in opposition was dated September 24, 2019 (well after the August 28, 2019 "official response" correspondence from DAG that SLED cited in support of their argument and which did not mention the "too hot" issue at all) and providing his own lab report dated September 27, 2019 showing the Marion crop testing a Total THC% of 0.26%, within the statutory THC limits.

127.    Pendarvis' October 8, 2019, *Supplemental Memo* also noted that DAG had notified SLED that it was finding Pendarvis in "willful violation" as early as the August 5, 2019, Memo from UNDERWOOD to NEALE (exhibit D to the Oct. 8th *Supp Memo*) and that SLED had in response, requested the Aug. 8th Op. from SCAG (exhibit E to the Oct. 8th *Supp Memo*).

Pendarvis then quoted verbatim from the Aug. 8th Opinion's "Conclusion" section before noting that "Defendant SLED did none of the above…"

128.    On October 8, 2019, the parties in the Marion case appeared before Judge Seals in Horry County for a hearing on the merits regarding the injunctive relief requested by Pendarvis in the Marion County case. As the issue being contested at the time was the "enforcement" efforts, SLED argued on behalf of the Defendants. The Court heard arguments from both sides and took the matter under advisement to allow for sufficient time to review the submitted materials.

129.    Of note, during the October 8, 2019, SLED's trial counsel conceded the "too hot" issue during oral argument, stating "I'm not going to get into the weight issue because Patrick's right. I learned yesterday via talking to the investigator that yeah, I might test four of these plants and they may be out of compliance but these two plants might be in compliance."

130.    Later that day, via email timestamped 3:10 p.m., the Court notified the parties that the preliminary injunction was being granted and providing instructions to Pendarvis' attorneys to draft a proposed order.

131.    On November 8, 2019, the Court e-filed an Order on the Marion case. In that Order, the Court specifically noted the protection against unconstitutional takings citizens have pursuant to case law, the Federal Due Process clauses (found in the Fifth and Fourteenth Amendments) and the South Carolina Constitution:

> "When a property interest has been created, the due process clause, not state regulations, defines what process is constitutionally mandated. At a minimum, due process usually requires adequate notice of the charges and a fair opportunity to meet them." Bowens v. N.C. Dept. of Human Resources, 710 F.2d 1015, 1019 (4th Cir. 1983), internal citations omitted. "An impartial decision maker is an essential element of due process." Bowens at 1020, internal citations omitted.

While case law recognizes the level of process due may be "flexible" dependent upon the demands of the situation, South Carolina appellate courts have refused to interpret this to mean the flexibility is so pliable as to allow a governmental agency to refuse to announce the rules of procedure it intends to use to confiscate property. John M. McIntyre & Silver Oak Land Mgt. v. Sec. Comm'r of S.C., 425 S.C. 439, 449, 823 S.E.2d 193, 198 (Ct. App. 2018), citing Kurschner

Furthermore, the South Carolina Constitution specifically declares that:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review. (1970 (56) 2684; 1971 (57) 315.)

South Carolina Constitution, Art. I, §22.

The very next section of our state constitution provides that provisions such as Art. I, §22 "shall be taken, deemed, and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory and permissory by its own terms." South Carolina

Constitution, Art. I, §23.

The necessity for notice, an opportunity to be heard and the right to appeal an administrative agency's decision is embodied by this dispute. While the Defendants contend that

Despite stating that it serves as "the official response" to Pendarvis' "actions," there is no notice within the August 28, 2019 correspondence to Pendarvis that his crops will be seized and destroyed. The correspondence merely states Defendant SCDA has "notified SLED and fulfilled the requirement of reporting to the Attorney General these culpable violations, greater than negligence, of the Hemp Farm Program as such requirement is set forth in S.C. Code Ann. Section 46-55-40(B)." Likewise, there is no notification anywhere in the correspondence as to what administrative appellate procedure Pendarvis is entitled to or any deadline he has to challenge any of these "findings" by Defendant SCDA. Finally, there is no notice whatsoever in that correspondence that the Plaintiffs' plants tested "too hot."

132.    The Court's November 8, 2019 Order in the Marion case specifically discussed the August
8th Op, citing to Pendarvis' *Supplemental Memo* and its exhibits.:

> The Court notes that the Plaintiffs right to due process was recognized by the South
> Carolina Attorney General's Office in an opinion which it appears Defendant SLED sought in
> response to being informed of Plaintiff Pendarvis' alleged violations. Via memorandum dated
> August 5, 2019, Defendant SCDA requested Defendant SLED "enact enforcement of this willful
> violation by Mr. Pendarvis." *Supplemental Memo*, Ex. D. Within three (3) days, Defendant SLED
> had requested an opinion from the South Carolina Attorney General, apparently an "expedited"
> request, seeking guidance as to the appropriate procedure by which to enforce a "willful violation
> of the South Carolina Hemp Farming Act." *Supplemental Memo*, Exhibit E. That opinion from
> the South Carolina Attorney General stated:
>
>> In conclusion, it is the opinion of this Office that in absence of legislative direction,
>> SLED should seek judicial authorization for the seizure of illegally-grown hemp in
>> order to ensure that the grower receives due process consistent with the
>> Constitutions of the United States and the State of South Carolina. *See, e.g., State
>> v. 192 Coin-Operated Video Game Machines*, 338 S.C. 176, 525 S.E.2d 872 (2000).
>> We advise that this authorization be sought with notice to the grower and an
>> opportunity for them to be heard in a hearing in an abundance of cautions. *See
>> id.*....Therefore our Office advises that SLED proceed with the utmost care to fully
>> ensure that the grower and all interested parties receive due process in any
>> enforcement action.
>
> *Supplemental Memo*, Exhibit E., p.5.
>
>     While Attorney General opinions are not binding, our appellate courts have instructed that
> "they should not be disregarded without cogent reason." <u>Marchant v. Hamilton</u>, 279 S.C. 497, 502,
> 309 S.E.2d 781, 784 (Ct. App. 1983), *citing* <u>Etiwan Fertilizer Co. v. South Carolina Tax
> Commission</u>, 217 S. Ct. 354, 60 S.E. (2d) 682 (1950). Under the facts as presented, the Court can
> find no cogent reason to disregard the reasoning set forth by the South Carolina Attorney General
> opinion issued at Defendant SLED's request in this matter.

133.    On December 9, 2019, SLED, through new counsel, filed a *Notice of Appeal* in the Marion
case, appealing the November 8, 2019, Order leaving the injunctive relief in place during the
pendency of the declaratory judgment action.

134.    On January 13, 2020, Pendarvis' served SLED and DAG with interrogatories (IROGs) and requests for production (RFPs) in the Marion case.

135.    On February 20, 2020, Pendarvis' counsel sent an email to SLED's counsel and TERRY inquiring of the status of responses to the January 13, 2020, discovery requests in the Marion case.

136.    On February 25, 2020, having received no response to the February 20, 2020, email, Pendarvis' counsel noted the failure by SLED or DAG to respond and that a motion to compel would be filed. Later that day, SLED's counsel sent an email that he was traveling out of state, had provided the discovery to his client, but requested a 30-day extension. Pendarvis' counsel responded noting the new deadline with an extension would be March 13, 2020, and that was fine, provided "your clients actually produce responses and not form objections with no information" specifically noting a "recent case with SLED has been like pulling teeth."

137.    On April 1, 2020, DAG provided discovery responses in the Marion case.

138.    Of note in DAG's April 1, 2020, discovery responses, in response to IROG#12, which asked DAG to "list with specificity all contact/communications between the Defendants about the Plaintiffs and/or their crops in both Marion and Dorchester Counties," DAG identified a single communication:

> **ANSWER:** Defendant sent a memorandum to Defendant SLED regarding Plaintiff's unlawfully grown hemp on or about August 5, 2019.

139.    Of note in DAG's April 1, 2020, discovery responses, in response to IROG#13, which asked DAG to list with specificity all contact/communications between you and any third party regarding the Plaintiffs, DAG identified only:

> ANSWER: Defendant asserts it contacted by way of letter the South Carolina Law Enforcement Division on or about August 5, 2019 and the Attorney General for the State of South Carolina on or about August 21, 2019. Further Answering, Defendant would crave reference to the documents being produced contemporaneously herewith in response to Plaintiff's First Set of Requests for Production of Documents.

The documents produced contemporaneously did not contain numerous emails between the DAG defendants and SLED defendants that were later produced in the Dorchester County state case, a fact best exemplified with the DAG produced documents in the Marion case being 52 pages produced versus 195 pages produced in the Dorchester case. Nor were there any communications the DAG defendants engaged in/were copied on with the SCAG defendants identified or produced (other than the identification of the letter to SCAG identified in IROG#13 answer above).

140.    Of note in DAG's April 1, 2020 response to IROG#17, which asked DAG to list with specificity "every prosecutor/attorney general, judicial officer, clerk of court and/or other court personnel the Defendants communicated with about seizing and destroying the Plaintiffs' crops in both Dorchester and Marion Counties," identify if the information of the communication was subsequently share with other parties and if so, identify the other parties, DAG identified only:

> ANSWER:    Defendant asserts it sent a letter to the Attorney General for the State of South Carolina regarding the Plaintiff's violations of the Hemp Farming Act on August 21, 2019.

141.    Via April 2, 2020, emails, Pendarvis' counsel inquired of SLED's counsel the status on SLED's discovery responses and was told by SLED's counsel that draft responses had been done, documents requested but not received, and that he would be checking with WHITSETT on the status.

142. On May 15, 2020, SLED filed their initial brief and designation of matter for the Marion County appeal. At no time in any filing at the trial level, or in any appellate filing, did SLED ever identify or refer to any attorney general opinion other than the August 8, 2019, AG Op.

143. On July 28, 2020, SLED finally produced discovery responses for the Marion case, 197 days late. Notably, in responses WHITSETT participated in answering, SLED did not identify or produce any AG opinion requested, created or amended **after** the August 8th AG Op. and SLED flat-out refused to identify or produce anything related to the Dorchester County crop. SLED's IROG#17 answer in the Marion case is a perfect example of SLED's obstructionist conduct:

> 17.    Please list with specificity every prosecutor/attorney general, judicial officer, clerk of court and/or other court personnel the Defendants communicated with about seizing and destroying the Plaintiffs' crops in both Dorchester and Marion Counties. For the purposes of this interrogatory, such responses should identify the parties to the communication, the date/time/method of communication, the party who instigated the communication and the information relayed in the communication. If the information of the communication was subsequently shared with other parties, please so identify the other parties.
>
> **RESPONSE #17:**
>
>    Objection. The Defendant objects to the production of any information relative to any matters in Dorchester County as such is irrelevant and immaterial to the matter before this Court. Notwithstanding this objection and expressly reserving it, as to the Marion County matter, upon information and belief, Plaintiff's counsel, Patrick McLaughlin, was copied on every communication from the Defendant to any prosecutor or judicial officer related to this matter. [2]

---

[2] The response that Plaintiff's counsel was copied on every communication from SLED to any prosecutor or judicial officer related to this matter ignores numerous communications between the SLED Defendants and SCAG Defendants **after** the Marion case was filed and ignores the fact that the previous communications with SCAG Defendants and Judge Diane S. Goodstein's office were directly related to establishing the legal authority to conduct the enforcement actions that SLED conducted on the Dorchester crop and then attempted to conduct on the Marion crop.

144.    Via Rule 11 correspondence dated February 18, 2021, Pendarvis notified Attorney

Lindemann of deficiencies in SLED's discovery responses in the Marion case. Specifically,

Pendarvis noticed that SLED's objections to providing "any information relative to any matters

in Dorchester County as such is irrelevant and immaterial" were improper under the rules. That

the evidence sought was reasonably calculated to lead to admissible evidence and as such,

demanded the production of such evidence. Pendarvis also noted that the blanket "any

communications to and from Adam Whitsett are privileged as attorney-client communications"

was improper without an adequate privilege log. Pendarvis demanded the noticed deficiencies

be cured within fourteen (14) days or warned that a motion would be filed seeking sanctions.

145.    On March 12, 2021, having received no response from SLED or their attorney regarding

their deficient discovery responses, Pendarvis filed a *Motion to Compel  Discovery Responses*

*from SLED* on the Marion case. In that motion, Pendarvis argued that SLED's attempt to deny

discovery related the Dorchester County crop was not credible because there had actually never

been a referral to SLED about the Marion County crop, only a referral for the Dorchester

County crop, pointing out "SLED cannot refuse producing discovery of information related to

Dorchester since the entire Marion Couny matter arises from the Dorchester matter. The two

cannot be separated." 3/12/2021 *Motion*, p.7.

146.    In the March 12, 2021 Marion County motion to compel, Pendarvis specifically argued:

For instance, if SLED was involved in communications regarding the seizure of Pendarvis' hemp crop in Dorchester and was told by a judicial officer, other agency and or internally that a hearing would be necessary, that is wholly relevant and material to the current litigation. If communications show willful attempts to ignore warnings that seizing and destroying the hemp crop in Dorchester would violate Pendarvis' due process rights, then the subsequent attempts to follow the same procedure in Marion would make such communications and discussion relevant and material as to notice in the present matter.

3/12/2021 *Motion*, p.7.

147.   In the March 12, 2021 Marion County motion to compel, Pendarvis specifically noticed SLED that despite their interrogatory answers having stated "there are numerous emails and memorandum from the Attorney General as well as the Department of Agriculture" and "communications with the Attorney General's Office included opinions from the Attorney General. This includes emails between Adam Whitsett and David Jones," no such communications had been produced. Pendarvis specifically noticed SLED that "if there are communications that involved other parties/agencies, those need to be produced" and any claims of privilege needed to actually comply with the requirements of Rule 26(b)(5)(A) SCRCP to clearly identify what was being withheld.

148.   On March 10, 2022, less than two (2) hours before a hearing on Pendarvis' Marion County motion to compel was to be heard, KEEL's attorney contacted Pendarvis' counsel by telephone, asking if the hearing was necessary since they had subsequently produced "everything" in the Dorchester County case. Pendarvis' counsel noted that KEEL had not produced everything, as there had been specific discovery identified, yet not produced in either case despite multiple notices. KEEL subsequently produced 79-pages of missing discovery.

**Dorchester County State Civil Case**

149.    On August 23, 2021, Pendarvis filed a civil complaint in the Dorchester County Court of Common Pleas, C/A No.: 2021-CP-18-01486 (hereinafter "Dorchester case"). That complaint was filed against KNIGHT, KEEL and WEATHERS in their official capacities and John Doe(s), asserting causes of action for False/unlawful arrest/imprisonment and assault and battery against KEEL in his official capacity and outrage, abuse of process, defamation/defamation per se, negligence/gross negligence/recklessness and conversion against all defendants.

150.    Upon serving the state case summons and complaint, Pendarvis also served discovery requests upon the defendants. In addition to interrogatories and requests for production, Pendarvis also served KEEL with two (2) requests for admission (RFAs) pursuant to Rule 36 SCRCP:

> 1,    Admit that SLED sought judicial approval to destroy Plaintiff's hemp crop.
>
> 2.    Admit that judicial approval of SLED's action was denied.

151.    Pendarvis asked those RFAs because he knew about the August 8 AG Op., had never seen any judicial authorization for the seizure and destruction of his hemp crop, had never been afforded an opportunity to be heard to challenge any findings that led to the destruction of his hemp crop and could not understand why KEEL would ask the SCAG defendants for an opinion about the appropriate procedure to take in his case and then not follow that procedure.

152.    Via email dated October 15, 2021, KEEL's attorney asked for a twenty-one (21) day extension to respond to Plaintiff's written discovery requests. Plaintiff's counsel responded back that same day agreeing to an extension provided "we get full and complete answers" (a

condition necessitated by the discovery conduct already being engaged in by SLED in the Marion case and detailed above):

> **From:** Brad Hutto
> **To:** Andrew Lindeman
> **Cc:** patrick@wukelalaw.com
> **Subject:** Re: Pendarvis v. LC Knight, Mark Keel et al. - 2021-CP-18-1486
> **Date:** Friday, October 15, 2021 4:57:44 PM
>
> We not have a problem granting an extension provided that we get full and complete answers so that we can move forward with a deposition schedule with written discovery in hand. Have a great weekend

153.    The same day that extension was requested, KEEL responded to Pendarvis' request for admissions (RFAs) as such:

> 1.    Admit that SLED sought judicial approval to destroy Plaintiff's hemp crop.
>
> **RESPONSE #1:**
>
> **Denied as stated.** Further answering, on September 19, 2019, Special Agent John Neale with the South Carolina Law Enforcement Division (SLED) obtained an arrest warrant for the Plaintiff for Unlawful Cultivation of Hemp. Special Agent John Neale met with Dorchester County Magistrate Judge Ryan Templeton who issued the arrest warrant.

> 2.    Admit that judicial approval of SLED's action was denied.
>
> **RESPONSE #2:**
>
> The Defendant Keel objects to this request in that the reference to "SLED's action" is vague and ambiguous. The Plaintiff does not specify the "action" to which he is referring. To the extent a response is required, the Defendant Keel denies the request as stated.

154.    Via Rule 11 correspondence dated November 9, 2021, Pendarvis notified KEEL that he believed KEEL's responses to RFA#1 and RFA#1 were "bad faith efforts to evade properly responding under the rules."

155.    Specifically, Pendarvis noticed that KEEL's response to RFA#1 was improper:

> The response for RFA#1 is improper, as it does not admit or deny the request submitted. The Plaintiff is not asking SLED whether or not they sought judicial approval to arrest the Plaintiff, which is what your response to RFA#1 "admits." We are specifically asking SLED to admit they sought judicial approval to destroy the Plaintiff's hemp crop.

and pointed out that KEEL should be well aware of the distinction between arrest and seizure/destruction since he had specifically requested an Attorney General opinion to instruct him "on the appropriate procedure to pursue enforcement of the Hemp Farming Act with hemp grown in violation of the Act" and the AG opinion had specifically told KEEL he "should seek judicial authorization **for the seizure** of illegally-grown hemp **in order to ensure that the grower receives due process**…" 11/9/2021 *Rule 11 letter,* p.4. Pendarvis noticed KEEL that:

> "Admitting" that SLED sought approval to **arrest** the Plaintiff is a blatant attempt to avoid admitting or denying whether or not SLED actually attempted to comply with opinion they received from the South Carolina Attorney General.

156.    Pendarvis also noticed KEEL his RFA#2 response that the reference to "SLED's action" is vague and ambiguous was not credible since the "action" referred to was the action identified through the only other RFA served (the seizure and destruction of the crop) and violated Hon. Joseph J. Anderson Jr.'s oft-cited discovery opinion's instruction on making such objections ("If the party believes that the request is vague, that party shall attempt to obtain clarification prior to objecting on this ground." – *Curtis v. Time Warner Ent'ment-Advance/Newhouse P'ship,* C/A No.: 3:12-cv-2370-JFA, May 13, 2013, p.3). Nevertheless, Pendarvis proceeded to clarify for KEEL what he was referring to by "action":

> Be that as it may, the "action" referred to in RFA#2 is the destruction of the Plaintiff's hemp crop.

157.    Pendarvis' November 9, 2021, Rule 11 letter further noticed KEEL that his discovery was deficient in that he had failed to produce a Rule 33 verification (despite such being specifically demanded) and that KEEL had only produced discovery Bates stamped *SLED-001-089*, yet referenced Bates stamped pages beyond those numbered pages.

158.   KEEL refused to cure the deficiencies noticed via Pendarvis' November 9, 2021, Rule 11 letter.

159.   As noted above, at the last minute before a motion hearing on Pendarvis' motion to compel in the Marion Co. case, KEEL produced 79-pages of missing discovery. After review of that missing discovery, Pendarvis sent KEEL another Rule 11 letter on March 14, 2022.

160.   In the March 14, 2022, Rule 11 letter, Pendarvis specifically noticed KEEL that the newly produced discovery showed his responses to RFA#1 and RFA#2 were bad faith efforts to evade properly responding under the rules. Pendarvis specifically pointed out email correspondence between WHITSETT and Gil Gatch, then law clerk to the Hon. Dianne S. Goodstein, Chief Administrative Judge for Dorchester County. That correspondence was courtesy copied to NEALE, ONEAL and WELLS and shows that KEEL specifically sought the very judicial approval which KEEL had specifically denied seeking, via an *ex parte* submission of a proposed *Hemp/Marijuana Seizure Order and Order of Destruction*:



**From:** Whitsett, Adam <awhitsett@sled.sc.gov>
**Sent:** Wednesday, September 11, 2019 9:10 AM
**To:** Goodstein, Diane S. Law Clerk (Gil Gatch) <DGoodsteinLC@sccourts.org>
**Cc:** Neale II, John <jneale@sled.sc.gov>; Oneal, Frank <foneal@sled.sc.gov>; Wells, Jason <jwells@sled.sc.gov>
**Subject:** Proposed Hemp/Marijuana Seizure Order and Order of Destruction

*** EXTERNAL EMAIL: This email originated from outside the organization. Please exercise caution before clicking any links or opening attachments. ***

Mr. Gatch:

I hope this correspondence finds you well.  Be advised that SLED S/A John Neale and I would like to meet with Judge Goodstein this afternoon to discuss the attached proposed Hemp/Marijuana Seizure Order and Order of Destruction in the hope that the Judge will sign such.  It is my understanding that you spoke with SLED Major Frank O'Neal and it is my understanding that Judge Goodstein would be available for such a meeting at 1:30 PM today; however, I thought it prudent to confirm with you before S/A Neale and I make our respective trips to the courthouse.  Is 1:30 still a convenient time?  My cell number is below should you need to speak with me at any time.

With kind regards, I am
Sincerely,
Adam

Adam L. Whitsett, Esquire
General Counsel
South Carolina Law Enforcement Division

161.  Pendarvis noted the obvious evasiveness of KEEL's original response to RFA#1 explaining in detail NEALE's actions to obtain the **arrest warrant**, yet ignoring all the actions NEALE, ONEAL and WHITSETT took to obtain the very judicial approval RFA#1 had specifically requested KEEL admit to seeking.

162.  The proposed order submitted by NEALE and WHITSETT on September 11, 2019, was drafted by WHITSETT and ordered "the destruction of all of the plants at the above-listed property location in any manner and at such time and in such manner deemed appropriate by SLED. **A copy of the July 10, 2019, Attorney General's Opinion on this issue is attached hereto and hereby incorporated herein**."

163.  The inclusion/submission of the July 10th AG opinion is notable in that it is **not** the opinion specifically requested by KEEL for the appropriate procedure in enforcing Pendarvis' alleged willful violation and does not contain the specific warnings by SCAG defendants that "SLED **proceed with the utmost care to fully ensure that the grower and all interested parties receive due process**." That July 10th AG Op. specifically does **not** have the instruction to seek judicial authorization by providing "notice to the grower and an opportunity for them to be heard in a hearing."

164.  Pendarvis believes the submission of the July 10th AG Op. instead of the August 8th AG Op. was an intentional and willful attempt on the part of KEEL, WHITSETT, NEALE and ONEAL to mislead the Court into signing an *ex parte* order authorizing SLED's seizure and destruction of Pendarvis' Dorchester Co. hemp crop in direct contradiction of the "proper procedure" they had sought and obtained specifically for his case via the August 8th AG Op.

165.  When specifically asked to admit this misleading conduct to the Court was intentional, KEEL, through responses verified under oath by WHITSETT, denied and instead blamed

Judge Goodstein (*See* KEEL's *Responses to Plaintiff's Second Set of RFAs* dated May 20, 2022 and WHITSETT executed *Verification* dated May 31, 2022 in Dorchester case):

> 12.   Admit that KEEL chose **not** to share with Judge Goodstein the August 8, 2019 AG opinion.
>
> **RESPONSE #12:**
>
> **Denied as stated. The Defendant Keel admits that the Sworn Application for Hemp/Marijuana Seizure Order and Order of Destruction sent to the law clerk of Judge Diane Goodstein did not include as an attachment a copy of the August 8, 2019 Attorney General's Opinion; however, a request was made to Judge Goodstein for a meeting to discuss the situation, and that was declined.**

166.   KEEL made similar claims via correspondence to WILSON dated September 23, 2019, when he attempted to post-seizure/destruction obtain a "formal" opinion from the SCAG defendants by claiming that following the issuance of the August 8th Op. "SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, **the court would not entertain such**. **While no specific reasoning was provided by the court**…"

> S.C. Code Ann. § 46-55-40(B). To that end, on August 5, 2019, the Department of Agriculture notified SLED and The Attorney General of a willful violation of the Hemp Farming Act. However, there is no further guidance in the statute on this issue and no regulations have been promulgated. In that regard, SLED requested an opinion regarding the appropriate procedures to take in this instance and your office provided such. At that time, SLED had not received a copy of the Participation Agreement from the individual involved and was not aware of the consent to forfeiture and destruction contained therein. In addition, following the issuance of August opinion, SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain such. While no specific reasoning was provided by the court, there is simply no statutory or regulatory authorization for a court to entertain such request.

167.   Judge Goodstein did not refuse "to entertain" SLED's attempts to comply with the August 8th AG Op. because the SLED defendants were specifically attempting to **avoid** following the proper procedure of the August 8th AG Op, by seeking an *ex parte* order of destruction **without** a hearing.

168.    Judge Goodstein's law clerk specifically notified WHITSETT that while the judge would

    not sign the SLED defendants proposed order *ex parte*, she would be glad to give them a

    hearing on the matter:



169.    Rather than accept Judge Goodstein's offer to conduct the actual "proper procedure"

    proscribed by the August 8th AG Op. he had requested, KEEL, through WHITSETT, refused:



170.    Pendarvis noticed KEEL via his March 13, 2022, Rule 11 letter that his response to RFA#2

    was a bad faith effort to evade properly responding under the rules, as the above-emails show

    KEEL did seek judicial approval to destroy Pendarvis' hemp crop and that judicial approval of

    that action was denied.

171.    Pendarvis demanded that the bad faith responses be amended:

> Let me be clear: we view Defendant Keel's responses to RTA#1 and RTA#2 to be **intentional and willful bad faith attempts to obstruct and delay discovery**. Those RFAs directly asked Defendant Keel to admit that SLED sought judicial approval to destroy the Plaintiff's hemp crop and that judicial approval of such action was denied and Defendant Keel has now produced emails which show SLED asked a Judge for authorization and the Judge said NO.
>
> Based on the above, the **Plaintiff is specifically demanding Defendant Keel amend his RFA responses to properly respond to RFAs#1 and #2.**

172.    KEEL refused to amend and correct his responses, willfully and intentionally obstructing justice and denying/delaying discovery and due process in the Dorchester County state case.

### Known Conspiracy Conduct to Date

173.    Despite the ongoing and repeated attempts to deny/delay discovery in the state cases, as that discovery has painstakingly come about, it has established conduct amongst the defendants to conspire to violate Pendarvis' constitutional rights, deny him civil and criminal protections afforded him by law, take his property unlawfully, deny him of due process and obstruct justice.

174.    After refusing Judge Goodstein's offer to have a hearing and comply with actual advice given by the August 8th AG Op., the SLED defendants conspired with the DAG and SCAG defendants to "amend" the opinion and take Pendarvis' hemp crop in violation of his due process rights.

175.    According to KEEL's *Responses to Plaintiff's Second Set of IROGs* in the Dorchester case dated April 18, 2022, that conspiring began between WELLS and UNDERWOOD after Judge Goodstein refused to sign the proposed *ex parte* order without a hearing on September 11, 2019:

35.    Did Defendant Keel and/or any of his agents/employees inform Defendant Weathers and/or any of Defendant Weathers' agents/employees that SLED had attempted to obtain judicial authorization for the seizure and destruction of the Plaintiff's hemp crop, but that Circuit Court Judge Diane S. Goodstein had refused to sign the order **without** having a hearing? If so, please explain in detail the who, what, when, where, why and how of any such communications.

**RESPONSE #35:**

The Department of Agriculture was aware of the attempt that was made to obtain pre-seizure judicial authorization from Judge Diane Goodstein on September 11, 2019. It was thereafter that further discussions between Captain Jason Wells and SCDA Assistant Commissioner Derek Underwood led to SLED first learning of the Hemp Farming Program Participation Agreement on September 17, 2019.

176.    Emails withheld and not identified by KEEL at all in the state cases, but subsequently obtained by Pendarvis' via subpoena to the SCAG defendants show that WELLS, ONEAL, NEALE, WHITSETT and WOOD were all planning to seize and destroy Pendarvis' Dorchester Co. hemp crop the **day before** his arrest and any "amended" AG opinion was sought or obtained:

**From:** "Wells, Jason" <jwells@sled.sc.gov>
**Date:** September 18, 2019 at 3:16:13 PM EDT
**To:** "Oneal, Frank" <foneal@sled.sc.gov>
**Cc:** "Neale II, John" <jneale@sled.sc.gov>, "Whitsett, Adam" <awhitsett@sled.sc.gov>, "Wood III, Glenn" <gwood@sled.sc.gov>
**Subject:** Plan for Destruction of Hemp Field in Dorchester Co. - Trent Pendarvis

Major,

This email is to inform you of the plan we have in mind to deal with the unlawful hemp farm being operated by John Trenton "Trent" Pendarvis in Harleyville (Dorchester County). S/A John Neale is going to obtain one arrest warrant tomorrow morning

Today, I contacted the SC Forestry Commission to ask when is the first availability they will have to bring equipment to the farm in Harleyville for destruction of the plants. My contact at Forestry should get back with me today to let me know. Once we have a date set for destruction, we will meet at the farm in Harleyville and contact Pendarvis. Pendarvis will then be informed of the arrest warrant and the plans for destruction.

The destruction is based on the agreement (see attached copy) that Pendarvis entered into with the SCDA on May 13, 2019. The agreement Pendarvis signed stated that:

"Permitted grower acknowledges and consents to the forfeiture or destruction, without compensation, of hemp material:

1) Found to have a measured delta-9 THC content of more than 0.3 percent on a dry weight basis
2) Bearing off-label pesticide residues regardless of the source or cause of contamination
3) Growing in an area that is not licensed by SCDA

177.    In response to a specific subsequent interrogatory referencing the unidentified and unproduced email above, KEEL has identified that WELLS' "contact" at FORESTRY as CALORE, who helped set up the FORESTRY agents/employees SCRUBBS and EADDY who showed up with FORESTRY equipment and destroyed Pendarvis' crop.

178.    Pendarvis is informed and believes the reason for not identifying and producing the above September 18, 2019, email is obvious: it shows how the SLED and DAG defendants conspired with the SCAG defendants to violate Pendarvis' due process rights the August 8th AG Op. had warned KEEL to protect.

179.    Pendarvis is informed and believes that conspiracy is further supported by the email exchanges which occurred on the morning of his arrest, September 19, 2019. Those emails begin at 7:20 am, with WHITSETT emailing COOK:

-----Original Message-----
From: Whitsett, Adam <awhitsett@sled.sc.gov>
Sent: Thursday, September 19, 2019 7:20 AM
To: Bob Cook <BCook@scag.gov>
Subject: Hemp Update

You available for a phone call this morning? We have had an update that Chief wants me to discuss.

180.    WHITSETT has verified under oath that "Chief" in the above-email is KEEL, showing KEEL's personal involvement in violating Pendarvis' rights.

181.    Thirty minutes later, at 7:50 am, WHITSETT forwards COOK the email WELLS had sent the day before titled *Plan for Destruction of Hemp Field in Dorchester Co. – Trent Pendarvis*. COOK in turn forwards that email to JONES at 7:57 a.m.

182.    In an attempt to further justify their action, WHITSETT sends JONES and COOK the following email at 8:34 a.m.:

| From: | Whitsett, Adam |
|-------|----------------|
| To: | David Jones; Bob Cook |
| Subject: | Hemp |
| Date: | Thursday, September 19, 2019 8:34:57 AM |
| Attachments: | Pendarvis Trent Participation Agreement.pdf |

David and Bob:

Attached is the agreement that this hemp farmer signed with the relevant portions highlighted. In addition, be advised that 2 of the 6 samples SLED tested from this illegal field were above the .3 allowable threshold.

At that time, no one had ever noticed Pendarvis that any of his plants were "too hot" nor allowed him the opportunity specifically allowed for under the Act to "recondition" the plants.

183.    By 10:11 a.m., JONES and COOK "amended" their August 8th AG Op. to agree with SLED's "conclusion in the abstract that if there has been a valid consent as you describe, no judicial authorization for seizure upon notice from the Department of Agriculture that it has found hemp grown unlawfully in willful violation of applicable law," claiming that:

> Based on these additional facts, we supplement our previous advice to you such that where a grower has consented to the seizure and destruction of unlawfully-grown hemp, SLED or another appropriate law enforcement authority with jurisdiction ==may proceed with the destruction upon notification from the Department of Agriculture that it has found cannabis sativa grown in willful violation of applicable law==. Of course the scenario you present involves highly fact-specific questions which this Office cannot determine. We reiterate that we defer to law enforcement's determination of these factual questions in the first instance, and that they ultimately must be determined by a court.

184.    Pendarvis is informed and believes that the issuance of this "amended" emailed opinion was a *fait accompli* provided by the SCAG defendants as legal cover for the SLED, DAG and DCSO defendants to arrest Pendarvis without affording him the specific protections of the Act and take Pendarvis property' in violation of his due process rights, a course of action that was already set in motion to the point that agents/equipment were merely waiting on this email to come through before acting. COOK and JONES conduct in providing this legal cover to the SLED, DAG and DCSO defendants' unconstitutional acts was so vital, that they got an "attaboy" from WHITSETT:



185.    Pendarvis is informed and believes that email communications show that the DAG defendants willfully and intentionally withheld notice from Pendarvis that he was being found in "willful violation" of the hemp act at the request of the SLED defendants, who wanted to deny Pendarvis any opportunity to be heard in challenging such finding. Pendarvis believes the August 28, 2019, email from UNDERWOOD to WELLS and ONEAL, courtesy copied to TERRY and ELSALAH is a good example of such conduct:

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Wednesday, August 28, 2019 11:54 AM |
| **To:** | Wells, Jason; Oneal, Frank |
| **Cc:** | Dalton, Alden; Elsalah, Vanessa |
| **Subject:** | Trent Pendarvis |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Guys,

I know John Neale is at farm today, however, during their sample visit, Trent has now mentioned another 2 acres not registered with SCDA.

He has sent in an amendment (@10:38 AM, 8-28-2019) to add these where hemp is CURRENTLY growing.

I need some direction as to when I can inform him that SCDA has rejected his amendment request and that he is willfully violation the agreement and law.

Please advise.

**Derek M. Underwood**
*Assistant Commissioner, Consumer Protection Division*

186.    Despite knowing that the SLED defendants intended to seize and destroy his hemp crop with no opportunity to be heard in challenge of the willful violation finding, the DAG defendants stood silent, denying Pendarvis the notice to inform his legal counsel of the planned seizure and destruction of his hemp crop and seek legal remedy to such action.

187.    Pendarvis is informed and believes that UNDERWOOD went so far as to share his "sample email" to Pendarvis with WELLS and ONEAL, courtesy copying TERRY, so that all those defendants knew how/when Pendarvis was being notified of his "willful violation" and that UNDERWOOD and/or DAG was providing Pendarvis with no notice as to how to challenge

75

that administrative finding nor any opportunity to be heard in challenging that administrative finding.

188.    Pendarvis is informed and believes that the SLED defendants were aware that the administrative finding of a "willful violation" had **not** been made by an impartial decision maker, rather it had been made by the same DAG defendants who were coordinating with the SLED defendants to try to help them seize and destroy Pendarvis' hemp crop.

189.    Pendarvis is informed and believes WEATHERS was specifically copied with the "rejection letter" for Pendarvis' amendment applications via August 28, 2019, email and, thus, was fully aware of the actions and conduct being taken by his agents against Pendarvis.

190.    Pendarvis is informed and believes the SLED and DAG defendants were aware that Pendarvis did not understand the seizure and destruction of his hemp crop was being pursued for the alleged "willful violation" and that they sought to limit any such explanation and information from being provided to him as evidenced by the following emails shared amongst multiple SLED and DAG defendants following Pendarvis receiving his "official response" from UNDERWOOD:

| | |
|---|---|
| **From:** | Underwood, Derek <dunder@scda.sc.gov> |
| **Sent:** | Thursday, August 29, 2019 11:55 AM |
| **To:** | Dalton, Alden; Elsalah, Vanessa; Leach, Clint; Wood, Aaron; Weathers, Hugh; Attaway, Alicia; Jeffcoat, Brittany |
| **Cc:** | Oneal, Frank; Wells, Jason |
| **Subject:** | FW: SCDA Amendment response to existing hemp fields not on record 8-29-2019 |
| **Attachments:** | Trent Pendarvis Ammendment Letter SCDA 8-28-2019.pdf |
| | |
| **Importance:** | High |
| | |
| **Follow Up Flag:** | Flag for follow up |
| **Flag Status:** | Flagged |

Staff,

Mr. Pendarvis was officially notified today that his two (2) amendment submissions were denied.

I am out until Tuesday so if he calls, please make sure our staff directs him to either me or Alden ONLY.

ccing SLED

Derek

> During that call, Mr. Pendarvis asked several times "what does this letter mean?" I explained the rejection of the amendments was because hemp was already being grown (mature plants over 5 ft) on non-approved GPS coordinates and our program's integrity would not allow SCDA to approve amendments after the fact. He again asked what it the letter means. I tried to reread the letter and what the law required us to do. He seemed confused and asked what he needed to do. I explained that he would need to contact our General Counsel since he was asking questions regarding the legal status and our reporting to SLED and AG's office.
>
> After a few more exchanges repeating the same questions, I ended the call.

191.    Pendarvis is informed and believes that DAG defendants JEFFCOAT and UNDERWOOD continued to attempt to assist SLED defendants in enforcement action against him **after** DAG had found him in willful violation by sending emails to Pendarvis asking him to provide the location of the Marion Co. hemp crop, some such emails being courtesy copied to TERRY and ENSALAH.

192.    Pendarvis is informed and believes that the DAG defendants coordinated their public comments about Pendarvis' arrest and the seizure/destruction of his hemp crop as noted by this September 18, 2019, email:



[3]

---

[3] Plaintiff would note that in the state case discovery, WEATHERS has redacted out pretty much any email sent internally that his general counsel, Alden TERRY, was included on and that this conduct is just more discovery abuse meant to deny due process: "Information – in and of itself – does not become privileged merely because it was communicated to an attorney." In re Mt. Hawley Ins. Co., 427 S.C. 159, 167-168 (2019). "Courts have consistently refused to apply privilege to information that the client intends his attorney to impart to others…or which the client intends shall be published or made known to others…" In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984).

193.    Pendarvis is informed and believes that the SLED and DAG defendants coordinated their

public statements about his arrest and the destruction of his hemp crop, as evidenced by emails

back and forth on September 20, 2019, sharing the agencies' press releases:



194.    After receiving SLED's press release, MOORE shared DAG's release again with LEACH,

TERRY and UNDERWOOD before issuing it at 12:32 p.m. on September 20, 2019:

195.    Pendarvis is informed and believes that the defendants' conduct violating his constitutional

rights has continued since the time of his arrest and the destruction of his hemp crop. Such

conduct includes, but is not limited to, the continued willful and intentional bad faith discovery

conduct in the State cases meant to obstruct justice and deny him due process, as well as the

post-arrest and seizure attempts to establish more "legal cover" for their conduct in the wake of legal counsel appearing on behalf of Pendarvis.

196.    KEEL's request for such "legal cover" continued when Pendarvis filed for the TRO in Marion County.

197.    In emails neither identified nor produced by KEEL in either state case, but obtained via subpoena to the SCAG defendants, the SCAG defendants continued attempts to provide the SLED defendants legal cover for violating Pendarvis' constitutional rights:



198.    SMITH, YOUNG, COOK, WILSON, LYNCH, KIRKLAND and VORBARGER all communicated about giving KEEL the "help" he really needed:



199.   COOK, having conspired with WHITSETT to "amend" the August 8th AG opinion via

email on September 19, 2019, as the SLED and DCSO defendants sat ready to take Pendarvis'

hemp crop without due process, wanted to be kept "advised" of the Marion Co. case:

200.   KIRKLAND, VORBERGER and SMITH conferred with WHITSETT over the phone on

September 26, 2019, who was supposed to stop by their office to meet with them the next day.

None of those communications were ever disclosed by KEEL in either state case, despite discovery requests in both specifically asking for all communications about Pendarvis to be described with specificity:



201.    WHITSETT and TERRY specifically shared Judge Seals' October 8, 2019 email informing the parties he was granting Pendarvis' motion for preliminary injunction with SMITH. Via email dated October 22, 2019, WHITSETT and TERRY told SMITH that the Court's ruling "effectively ends this case and renders the entire Hemp licensure program meaningless."

202.    SMITH in turn forwarded that email to COOK on October 22, 2019, quoting from a section of Pendarvis' memo that specifically discussed SLED's obtaining the August 8th AG Op. only to ignore it. That email appears to have included as an attachment, SLED's "Return to TRO," thus providing SMITH, COOK and the SCAG Defendants with the arguments SLED had made in response to the TRO, namely the failure to argue or refer to any attorney general opinion other than the August 8th AG Op.

203.    In short, KEEL and WEATHERS and their agents have repeatedly refused to identify/produce responsive discovery and/or comply with the South Carolina Rules of Civil Procedure in a continued attempt to deny Pendarvis due process and obstruct discovery.

204.    Pendarvis is informed and believes that there were no emergent cirsumstances that supported denying him notice and an opportunity to be heard at hearing. It was simply the will of the defendants that he not be afforded his due process rights and they conspired together to violate his rights.

205.    Pendarvis is informed and believes that none of the defendants were ever provided with an order authorizing the seizure and destruction of his hemp crop, yet all of the defendants stood by and allowed his property to be taken in violation of his due process rights, despite his vocal challenges to the legality of doing so.

206.    Pendarvis is informed and believes that KEEL, through WHITSETT, specifically told WILSON and the SCAG defendants that Judge Goodstein had refused to authorize the seizure and destruction of Pendarvis' hemp crop.

207.    Pendarvis and is informed and believes that when NEALE appeared in front of Dorchester County Magistrate Judge Ryan Templeton to obtain the arrest warrant for Pendarvis, NEALE failed to inform Judge Templeton that they intended to seize and destroy Pendarvis' hemp crop or that Judge Goodstein had speciially refused to authorize such action.

208.    Pendarvis is informed and believes that ONEAL specifically contacted Judge Goodstein's law clerk "to ascertain which judge was the appropriate one in Dorchester County to contact to secure pre-seizure judicial authorization for the seizure of Pendarvis'" hemp crop. Despite having been told Judge Goodstein was the appropriate Judge for such judicial authorization, and knowing that Judge Goodstein had refused to authorize such conduct withouth having a hearing, ONEAL led and was the on-scene decision-maker for KEEL on September 19, 2019, seizing and destroying Pendarvis' hemp crop, specifically refusing to allow anyone to let Pendarvis contact his lawyer prior to the destruction of the crop.

209.    The criminal charges against Pendarvis were dismissed on or about August 5, 2022, with the Solicitor's Office specifically noting on the General Sessions tracking sheet that there was insufficient evidence to prove Pendarvis' actions were willful.

210.    Neither the SLED or DAG defendants issued any press release regarding the dismissal of the criminal charges against Pendarvis.

211.    Both the SLED defendants and the SCAG defendants have repeatedly claimed that the Hemp Farming Act is unclear and does not adequately explain the enforcement process, with the SCAG defendants citing as much in their opinions and even going so far to monitor press stories and respond to media about how unclear the law is, lest they and their opinion(s) be portrayed in a negative light:

> **From:** Robert Kittle <RKittle@scag.gov>
> **Sent:** Friday, October 4, 2019 9:09 AM
> **To:** Bob Cook <BCook@scag.gov>; Jeff Young <JYoung@scag.gov>
> **Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html
>
> He reached out to us back in August and wanted to get a copy of our opinion, which I gave him. Other than that he didn't talk to us. So he does have our opinion but didn't include what we said about the fact that the law needs to be clarified, although he did include in the story other people saying that. I'll give him a call.
>
> ---
>
> **From:** Bob Cook
> **Sent:** Friday, October 04, 2019 8:25 AM
> **To:** Jeff Young
> **Cc:** Robert Kittle
> **Subject:** RE: https://www.postandcourier.com/news/arrest-of-sc-hemp-farmer-underscores-growing-pains-for-budding/article_5dfc0c4c-de2e-11e9-9b1a-1719acae92ae.html
>
> Robert I suggest you call him and mention our first opinion where we said the law needs legislative or judicial clarification. He should have called us
>
> Robert D. Cook
> Solicitor General

212.    Pendarvis is informed and believes the emails above show the SCAG defendants are complaining about being denied similar "notice" and "oppoturnity to be heard" they conspired

with the other Defendants to deny him, with the noted exception their liberty or property were not being taken.

213.    Notably, the article SCAG Defendants were concerned about contained KEEL's response that "his agency sought proper legal advice before taking action in every step of the case," neglecting to inform the media and the public how he and his agency ignored the legal advice the SCAG Defendants had provided in their August 8th AG Op., a fact the SCAG Defendants did not care to share with the reporter or the public. *See* Gregory Yee, *Arrest of SC hemp farmer underscores growing pains for budding industry*, The Post & Courier, October 3, 2019.

214.    Despite the claimed 'murky" nature of the Act, the South Carolina General Assembly clearly wanted to protect South Carolina farmers from the arbitrary actions taken against Pendarvis by specifically directing that the corrective action plans described in S.C. Code §46-55-40 were "the sole remedy" for negligent violations and a licensee with such violations "shall not be subject to any criminal or civil enforcement action." S.C. Code §46-55-40(A)(3).

215.    Plaintiff is informed and believes that WEATHERS and the DAG defendants were aware at the time Pendarvis was being arrested and his hemp crop was being destroyed without due process, that WEATHERS had failed to submit a plan within sixty (60) days of the effective date of the Act that adequately including "a procedure to comply with the enforcement outlined in this act." *See* 2019 Act No.14, Section 2(A)(4).

216.    Pendarvis is informed and believes that since his arrest and the destruction of his hemp crop without due process, WEATHERS has submitted a state plan in accordance with S.C. Code §46-55-10 *et seq.* that actually includes the procedures for enforcement and that those procedures require notice, an opportunity to be heard and no action by the Commissioner "prior to the holding of an adjudicatory hearing" which "shall be conducted in accordance with the

requirements of the South Carolian Administrative Procedure Act" and further includes a section on how to appeal the findings of such hearings.

217.    Pendarvis is informed and believes that the DAG, SCAG, SLED, DCSO and FORESTRY defendants all knew such procedures did not exist at the time they conspired with the other defendants to seize and destroy Pendarvis' hemp crop and/or stood idly by allowing such to happen.

218.    Pendarvis is informed and believes that through their conduct documented above the defendants recklessly, intentionally and willfully violated his constitutional rights and denied him the specific protections of the Act.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 8TH AND 14TH AMENDMENTS – FALSE**
**ARREST/IMPRISONMENT AGAINST SLED AND DCSO DEFENDANTS)**

219.    Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

220.    At all times mentioned herein, the SLED and DCSO defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.  Additionally, during the time period in question, the Defendants were well aware of the Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment and to be free from cruel and unusual punishment.

221.    As described above, the SLED and DCSO defendants obtained and executed an arrest warrant versus Pendarvis for a willful violation of the hemp farming act, through misleading omissions to the magistrate (specifically that the Chief Administrative Judge for the circuit had refused to approve their action), while knowingly and intentionally depriving Pendarvis of the protections afforded him under the act (specfically his statutory right to a corrective action

plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-40), without need and in bad faith.

222.    That after the SLED defendants used force on Pendarvis and handcuffed him, DCSO defendants took Pendarvis into custody and transported him to the detention center.

223.    As a direct and proximate result of the SLED and DCSO defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

224.    At all times relevant to this action, the SLED and DCSO defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

225.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of the SLED and DCSO defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 4TH, 8TH AND 14TH AMENDMENTS – MALICIOUS PROSECUTION AGAINST SLED AND DAG DEFENDANTS)**

226.    The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of the SLED and DAG defendants.

227.    At all times mentioned herein, the SLED and DAG defendants were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.  Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment and to be free from cruel and unusual punishment.

228.    As described above, the SLED and DAG defendants instituted the criminal prosecution against Pendarvis and pushed for their continued prosecution while knowing that Pendarvis had been deprived of the protections afforded him under the Hemp Farming Act and S.C.

Constitution (specfically his statutory right to a corrective action plan being the sole remedy for a negligent violation, pursuant to S.C. Code §46-55-40 and his constitutional right under Art. I, §22 of the South Carolina Constitution to challenge DAG's finding), without need and in bad faith.

229.    Further, both the SLED and DAG defendants attempted to further their desired criminal prosecution of Pendarvis by knowingly and intentionally withholding relevant and/or reasonably calculated to lead to admissible evidence that, once obtained through other means, successfully helped get the criminal charges dismissed.

230.    That the criminal charges against Pendarvis were ended in his favor, specifically they were dismissed with the Solicitor's Office finding there was not enough evidence to support that Pendarvis had acted willfully.

231.    That Pendarvis is informed and believes that the SLED defendants specifically opposed the dismissal of the criminal charges.

232.    That Pendarvis is informed and believes that there was no probable cause to institute the criminal proceedings against him. Specifically, had Pendarvis been provided the statutory protections he was entitled to under the Act, the sole remedy for the alleged violations would have been corrective action plans.

233.    That the SLED and DAG defendants acted maliciously, as evidenced through their conduct described in the factual allegations above.

234.    That Pendarvis suffered deprivation of liberty consistent with the concept of seizure as a consequence of the legal proceedings against him.

235.   As a direct and proximate result of the SLED and DAG defendants conduct, Pendarvis suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

236.   At all times relevant to this action, the SLED and DAG defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff.

237.   The Plaintiff was harmed and suffered injury in violation of the Plaintiff's constitutional rights through the acts and omissions of the SLED and DAG defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1985**
**(CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS – OBSTRUCTING JUSTICE**
**& DENYING THE PLAINTIFF RIGHTS AND PRIVILEGES AGAINST ALL**
**DEFENDANTS)**

238.   Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

239.   At all times mentioned above, the Defendants were all acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

240.   Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his rights to:

    a.   due process of law;

    b.   to be free from unnecessary and unwarranted force;

    c.   to be free from false arrest and/or imprisonment;

    d.   to be free from the deprivation of property without due process of law;

    e.   to be free from the deprivation of liberty without due process of law; and,

f.  to the fair, efficient and speedy administration of justice through the criminal and civil justice system.

241.   As described through the factual allegations above, the Defendants conducted themselves repeatedly in violation of the Plaintiff's constitutional rights, specifically seeking to deny him due process and obstruct justice.

242.   As a direct and proximate result of the Defendants acts and omissions, the Plaintiff suffered deprivations of his rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

243.   At all times relevant to this action, the Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly violated the Plaintiff's constitutional rights despite that knowledge.

244.   That the Defendants had notice and knowledge that the Plaintiff was being denied his due process rights prior to the instigation of the State cases by the Plaintiff.

245.   That despite having the notice and knowledge that the Plaintiff's constitutional rights were being violated prior to the instigation of the State cases, the Defendants conspired to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law. Specifically, but not limited to, those Defendants conspired to deny facts they know to be true to shield themselves and others from civil liability for the violation of the Plaintiff's civil rights.

246.   Plaintiff was harmed and suffered injury because of the Defendants violation of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1986**
**(NEGLECT TO PREVENT CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS –**
**OBSTRUCTING JUSTICE & DENYING THE PLAINTIFF RIGHTS AND PRIVILEGES**
**AGAINST ALL DEFENDANTS)**

247.    Plaintiff incorporates each of the preceding paragraphs herein as if set forth verbatim.

248.    At all times mentioned above, when the Defendants violated Pendarvis' constitutional rights, they were acting under the color or pretense of South Carolina State law, customs, practices, usage, and/or policy.

249.    Additionally, during the time period in question, the Defendants were well aware of Pendarvis' constitutional rights, including his right to due process, to be free from false arrest/imprisonment, and to be free from malicious prosecution.

250.    As described above, the Defendants repeatedly have violated the Plaintiff's constitutional rights to due process and equal protection under the law.

251.    As a direct and proximate result of the Defendants acts and omissions, the Plaintiff has suffered deprivations of his rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

252.    At all times relevant to this action, the Defendants knew or should have known of the wrongfulness of their conduct and the risk of substantial harm to the Plaintiff, but they repeatedly vioalted the Plaintiff's constitutional rights.

253.    That the Defendants had notice and knowledge that they and/or other Defendants were violating the Plaintiff's civil rights prior to the instigation of the State cases.

254.    That despite having the notice and knowledge that they and/or other Defendants were violating the Plaintiff's civil rights prior to the instigation of the State case, the Defendants conspired to impede, hinder, obstruct and/or defeat the due course of justice with the intent to

deny the Plaintiff the equal protection of the law. Specifically, but not limited to, the Defendants conspired to deny facts they know to be true to shield themselves and others from civil liability for the violation of the Plaintiff's civil rights.

255.    Plaintiff was harmed and suffered injury because of the Defendants violations of the Plaintiff's constitutional rights and that harm has been exacerbated by the conduct of the Defendants in conpiring to impede, hinder, obstruct and/or defeat the due course of justice with the intent to deny the Plaintiff the equal protection of the law.

256.    That Defendants had knowledge of the wrongs that were conspired to be done against the Plaintiff as described above, had the power to prevent or aid in preventing the commission of those wrongs, but neglected or refused to do so, causing further and/or exacerbating the harm to the Plaintiff.

## **PRAYER**

WHEREFORE, Plaintiff prays that the Court entered judgment against the Defendants and award him:

  i.    Actual and consequential damages to compensate the Plaintiff for his out-of-pocket expenses, pain, suffering, mental anguish, humiliation, and the indignity he has suffered because of the Defendants' conduct and the violation of his civil rights;

  ii.    Punitive damages;

  iii.    Attorneys' fees and costs recoverable under 42 U.S.C. § 1988; and

  iv.    Such further relief as is allowed by law and that the Court deems just and proper.

## <u>REQUEST FOR TRIAL BY JURY</u>

The Plaintiff, John Trenton Pendarvis, hereby demands a trial by jury on all claims so triable.

Respectfully submitted by:

**WUKELA LAW FIRM**

<u>s/Patrick J. McLaughlin</u>
Patrick J. McLaughlin (Fed. ID No. 9665)
PO Box 13057
Florence, SC 29504-3057
Phone:  (843) 669-5634
Fax:  (843) 669-5150
E-mail: patrick@wukelalaw.com
*-and-*
**WILLIAMS & WILLIAMS**
C. Bradley Hutto (Fed. ID. No. 2024)
P.O. Box 1084
Orangeburg, SC 29116
Phone: (803)534-5218
Fax:    (903)536-6298
cbhutto@williamsattys.com
**ATTORNEYS FOR PLAINTIFF**

Florence, SC
September 16, 2022