IN THE UNITES STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION
C/A No.: 2:22-cv-03142-BHH-MHC

| | |
|---|---|
| John Trenton Pendarvis, )<br> )<br>         Plaintiff, )<br> )<br>v. )<br> )<br>Alan M. Wilson, Mark A. Keel, Hugh E. )<br>Weathers, L.C. Knight, W. Jeffrey Young, )<br>Robert D. Cook, Emory Smith, Jr., Joanne )<br>Lee, David S. Jones, T. Stephen Lynch, )<br>Harley L. Kirkland, Wesley Vorberger, )<br>Robert Kittle, Adam L. Whitsett, Frank )<br>O'Neal, Jason Wells, Glenn Wood, John )<br>Neal, Rhett Holden, Alden G. Terry, )<br>Derek M. Underwood, J. Clint Leach, )<br>Aaron Wood, John Stokes, Vanessa )<br>Elsalah, Brittany Jeffcoat, Eva Moore, )<br>Ray Dixson, Frank Thompson, Robert )<br>Krutak, Jonathan Calore, Charlie Scrubbs, )<br>And Wayne Eaddy, )<br> )<br>         Defendants. ) | **PLAINTIFF'S MEMORANDUM IN OPPOSITION OF THE MOTION TO DISMISS OF THE SOUTH CAROLINA ATTORNEY GENERAL DEFENDANTS** |

  The Plaintiff, by and through the undersigned counsel, hereby responds to the South Carolina Attorney General Defendants Alan M. Wilson (WILSON), W. Jeffrey Young (YOUNG, Robert D. Cook (COOK), Emory Smith, Jr. (SMITH), Joanne Lee (LEE), David S. Jones (JONES), T. Stephen Lynch (LYNCH), Harley L. Kirkland (KIRKLAND), Wesley Corberger (VORBERGER), and Robert Kittle's (KITTLE) (collectively "SCAG") motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

  **I. INTRODUCTION**

  The Plaintiff has filed a complaint asserting various claims against thirty-three (33) individual defendants, who were at the times in question employed by the five (5) South Carolina governmental agencies that played a part in the Plaintiff's arrest and seizure/destruction of the

1

Plaintiff's hemp crop on September 19, 2019. Those five agencies are the South Carolina Attorney General's Office (SCAG), the South Carolina Law Enfocement Division (SLED), the South Carolina Department of Agriculture (DAG), the Dorchester County Sheriff's Office (DCSO) and the South Carolina Forestry Commission (FORESTRY).

The Plaintiff's complaint alleges four causes of action: 1) a §1983 cause of action for violation of Plaintiff's due process rights under the 4th, 8th and 14th amendments for false arrest/imprisonment against the SLED and DCSO defendants; 2) a §1983 cause of action for violation of Plaintiff's due process rights under the 4th, 8th and 14th amendments for malicious prosecution against SLED and DAG defendants; 3) a §1985 cause of action for conspiracy to interfere with civil rights by obstructing justice and denying the Plaintif rights and privileges against all defendants; and 4) a §1986 cause of action for neglecting to prevent a conspiracy to interfere with civil rights by obstructing justice and denying the Plaintiff rights and privileges against all defendants.

The facts of the case and the legal framework of the resulting claims are multi-faceted and complex. They include acts and omissions by the defendants not just leading up to and including his arrest and the seizure/destruction of his hemp crop, but include conduct by the defendants in the subsequent criminal prosecution, a state court declaratory judgment and injunctive relief action in Marion County, the subsequent appeal of an order in the Plaintiff's favor in the Marion County case, conduct in a separate state court civil action in Dorchester County and extrajudicial statements made by defendants to the public/media. That complained of conduct includes allegations of constitutional violations via obstruction of justice manifested by willful and intentional discovery misconduct in those state court actions and attempts to spin public opinion as to the righteousness of the defendants' conduct.

2

In short, the Plaintiff is alleging that these defendants all played a part in a conspiracy to violate his constitutional rights in a manner that has been ongoing for over three (3) years. That the harmful conduct was not just comprised of his unlawful arrest and the illegal destruction of his hemp crop, but also obstruction of justice through the willful and intentional denial of due process, withholding and hiding of evidence, refusing to comply with the rules of civil procedure and attempting to spin public opinion in their favor.

In support of his allegations, the Plaintiff filed a complaint that not only alleged those causes of actions, but also provided detailed factual allegations supporting the causes of actions. Those factual allegations detail specific facts to show knowledge and intent, identifying both specific instances of conduct and specific defendants that were engaged in the conduct.

Specifically, paragraphs 47 through 218 on pages 21 through 85 of the complaint contain those factual allegations. In detailing the factual allegations, many of those paragraphs direct the defendants to specific statutes, documents, communications, public comments/statements by defendants, and acts/comments made on video (with time-stamped designations).

The SCAG defendants' motion attacks the factual allegations of the Plaintiff's complaint as "a molehill of alleged facts," deploying different adjective synonyms throughout their motion (stunningly, nefarious, ridiculous, and outlandish) in indignation at the fact that the Plaintiff would dare seek to hold them accountable for the roles they played in these events.

While the Plaintiff will address the legal arguments raised by the SCAG defendants below, he will note his factual allegations are largely made via documented communications, records and statements by the defendants themselves. To the extent the SCAG defendants take issue with the those factual allegations, Plaintiff cannot help the reasonable inferences those documented facts suggest and support.

Instead of filing an answer and admitting or denying the pled factual allegations, the SLED defendants filed a motion to dismiss or in the alternative for a more definite statement, pursuant to Rules 12(b)(6), 12(e) and Rule 8 FRCP.

The Plaintiff files response.

### II.     Defendants requests for relief under Rule 12(b)(1) FRCP

Rule 12(b)(1) addresses the defense of lack of subject-matter jurisdiction. Rule 12(b)(1) FRCP. When a defendant makes a facial challenge to subject-matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In that situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction. Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

As when considering a Rule 12(b)(6) motion, under the SCAG defendants' Rule 12(b)(1) arguments, the court is required to accept the allegations in the pleading as true and **draw all reasonable factual inferences in favor of the party opposing the motion**. Gillapsie at 4, citing E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011), emphasis added.

Moreover, the court must evaluate "the complaint **in its entirety**, **as well as documents** attached or **incorporated into the complaint**." Gillapsie at 4, citing Id. at 448, emphasis added. "A complaint should not be dismissed as long as it provides sufficient detail about the claim to show that the plaintiff has a more-then-conceiveable chance of success on the merits." Gillapsie at 4, citing Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 511 (4th Cir. 2015)(internal quotation marks and brackets omitted).

4

A trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are "clearly…immaterial for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial or frivolous." Kerns at 193, quoting Bell v. Hood, 327 U.S. 678, 682 (1946).

Arguing under Rule 12(b)(1) that the Plaintiff lacks standing, the SCAG defendants attempt to frame Plaintiff's factual allegations against them as dealing solely with the Attorney General opinions that the SCAG defendants issued, ultimately arguing that Plaintiff's allegations supporting the SCAG's role in the conspiracy against him through the "allegation that the advice and opinion given by SCAG were mere 'legal cover' for SLED's intended actions…is not a factual allegation. It is a legal conclusion, and it is fatally flawed." (Motion, p.13). Those allegations are not legal conclusions. They are reasonable inferences that arise from the factual allegations pled.

The SCAG defendants argue that "Plaintiff cannot show that he suffered an 'injury-in-fact' that is casually related to conduct by any of the SCAG Defendants. At best, he can show that SCAG promptly responded to SLED's requests for advisory opinions concerning the enforcement of the Act." (Motion, p.13).

The SCAG defendants go to great lengths citing case law about how the authoring of AG opinions cannot qualify as a wrongful action and how any alleged injury from their conduct in issuing the AG opinons is "too remote." These arguments all ignore the factual allegations of the complaint "in its entirety." The Plaintiff is not alleging it was any advice rendered in the opinions themselves that harmed him: rather it was the SCAG defendants' willingness to issue "amended" opinions to specifically support a known attempt and effort by the SLED defendants to circumvent due process, knowing such attempts had been shot down by a judge, that contributed to the constitutional violations he suffered. (Complaint, ¶206).[1]

---

1 The issuance of the "amended" opinion in less than three (3) hours would not seem to comply

As the complaint specifically alleges, the SCAG defendants conspiring with the SLED defendants began through emails and telephone communications that started in the early morning hours of September 19, 2019, the day the Plaintiff was arrested and his hemp crop was destroyed. (Complaint, ¶¶174 and 179). Within 30-minutes of the initial email where WHITSETT informed COOK that KEEL "had an update the Chief wants me to discuss," WHITSETT was sharing with COOK SLED's "Plan for Destruction of Hemp Field in Dorchester Co – Trent Pendarvis," which COOK subsequently shared with JONES. (Complaint, ¶181).

For the SCAG defendants to argue that the Plaintiff's injury is "too remote" from this challenged conduct, they have to ignore that the SLED defendants literally "updated" them on their "plan for destruction," and that the SCAG defendants themselves had explained in the August 8th AG Opinion the constitutional injury that would follow from **not** affording the Plaintiff his due process rights. (Complaint, ¶¶ 89-93).

The Plaintiff would note that the "amended" September 19, 2019 opinion was never published or made available to the public. A search of available opinions with the search term "hemp" via the SCAG website's opinion search function, does not produce any result of the September 19, 2019 opinion. A review of available opinions for 2019, does not produce the "amended" September 19, 2019 opinion and instead only shows two opinions issued by SCAG that day: an opinion on "ghost guns" and an opinion on the powers afforded the State Inspector General.

---

with SCAG's own publicly declared "Review Process," which states: "All opinions have been reviewed by the Opinions Section and **represent the highest standards of research**." South Carolina Attorney General's website, https://www.scag.gov/opinions/what-is-an-opinion/ , emphasis added.

The SCAG defendants cite to the Fourth Circuit case of *Swanson*, arguing "absent extraordinary circumstances…liability will not attach for executing the statutory duties one was appointed to perform." Swanson v. Powers, 937 F.2d 965, 969 (4th Cir. 1991). Ellipses'd out of that sentence from *Swanson* is the phrase "which are not present here."

Plaintiff argues the pled factual allegations of his complaint document that extraordinary circumstances are present in his case: that the SCAG defendants: acknowledged and warned the SLED defendants of the likelihood of constitutional injury to the Plaintiff if certain procedural constitutional safeguards were not followed; were informed by the SLED defendants that they attempted to circumvent those procedural constitutional safeguards, but a judge had denied that circumvention; and that the SLED defendants needed assistance from the SCAG defendants to move forward with circumventing those procedural constitutional safeguards. Then COOK and JONES assisted the SLED defendants in circumventing those procedural constitutional safeguards and the known and predicted constitutional injury followed.

Plaintiff argues the question of whether or not that occurred in "good faith" is a question of fact to be determined by a jury, as the factual allegations pled could lead a reasonable jury to decide that conduct was not done in the good faith of just "doing their jobs," but rather in bad faith, to assist the SLED defenants with violating the very constitutional rights the SCAG defendants knew, and warned, such action would endanger.

The SCAG defendants argument that a favorable decision for the Plainiff would not redress the injury he suffered, appears to be founded on the idea that had COOK and JONES not conspired with WHITSETT and KEEL to amend their opinion, SLED would have continued forward with arresting the Plaintiff and destroying his crop, arguing that SLED possesses "exclusive jurisdiction and authority" over "general criminal investigations." (Motion, p.18).

7

First, this argument ignores that unlike a municipality seeking an opinion from the Attorney General's office, these opinions were sought by state law enforcement. Pursuant to Art. V, Sec. 24 of the South Carolina Constition, WILSON has supervisory authority over SLED's criminal cases.[2]

Second, the argument ignores the factual allegations of the complaint and the reasonable inferences those allegations give rise to: that a reasonable jury could conclude that had COOK and JONES refused to amend their opinion that morning, SLED's "plan for destruction," would not have gone forward.

It is clear from the factual allegations how important SLED's role in that "plan" going forward on September 19, 2019 was. The SLED defendants told the DAG defendants that they were "having to get AG opinions along the way" specifically for the "legal cover" the Plaintiff alleges, to avoid being "perceived in a negative light by the media or general assembly." (Complaint, ¶84). It was important enough for the SLED defendants to acknowledge to the DAG defendants the "legal cover" they were seeking through the AG opinions to avoid "negative light" with the media. (Complaint,¶84). It was important enough that WHITSETT needed to "update" the SCAG defendants at 7:20 in the morning to get them to "amend" their opinion, then "really appreciated" their assistance once they had done so. (Complaint, ¶¶179, 184). Further, SLED's assistance was so vital, that KEEL subsequently requested a "formal" opinion on September 23, 2019 from WILSON, specifically claiming that "SLED attempted to secure an order of destruction from a circuit court as discussed in the August opinion; however, the court would not entertain

---

[2] WILSON and the SCAG defendants should be familiar with this supervisory authority, as it was an issue during their challenge over WILSON's "recusal" in Pascoe v. Wilson, 416 S.C. 628 (2016).

such." (Complaint, ¶166). That request ultimately led to an official "amended" opinion by the SCAG defendants dated September 30, 2019.[3]

In short, Plaintiff argues that the SCAG defendants claims that the "Attorney General and staff thus have 'no power' whatever to control SLED's discretion regarding criminal enforcement ignores both WILSON's legal authority under the S.C. Constitution, the factual allegations pled and the reasonable inferences arising from those allegations.

### III.     Defendants requests for relief under Rule 12(b)(6) FRCP

The purpose of a Rule 12(b)(6) motion "is to test the sufficiency of a complaint." *See* Gillaspie v. United States, 2022 U.S. Dist. LEXIS 185185, p.3 (D.S.C. June 7, 2022), (citing Williams v. Preiss-Wal Pat III, LLC, 17 F. Supp.3d 528, 531 (D.S.C. 2014).

The SCAG defendants begin their 12(b)(6) section arguing that Plaintiff fails to set forth a claim under 42 U.S.C. §1985.

42. U.S.C. §1985 is titled "Conspiracy to interfere with Civil Rights." Subsection two of that statute is titled "Obstructing Justice; Intimidating party, witness or juror." It reads, in relevant part:

> …If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or the injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person…to the equal protection of the laws…

42 U.S.C. 1985(2)

Subsection three of that statute is titled "Depriving Persons of Rights or Privileges." It reads, in relevant part:

---

[3] Unlike the emailed "amended" opinion of Septherm 19, 2019, the "formal" amended AG opinion of September 30, 2019 **is** publicly reported and available through the SCAG website.

9

> …If two or more persons in any State or terrioty conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws…

42 U.S.C. 1985(3)

In *Griffin*, the United States Supreme Court specifically refused to find that a §1985(3) conspiracy could only be had for conspriacies motivated by racial discrimination. <u>Griffin v. Breckenridge</u>, 403 U.S. 88 (1971), fn.9. While courts have applied the *Griffin* doctrine more easily when racial motivation can be shown, Plaintiff argues that is merely because racial motivation readily meets the "invidiously discriminatory animus" standard because it is so universally accepted and understood to be wrong. However, there is nothing that prohibits courts from finding an "invidiously discriminatory animus" has motivated parties in a conspiracy to have a meeting of the minds to deprive a class, that is not identified through race.

In this case, Plaintiff argues he has sufficiently pled factual allegations identifying the class of persons's the SCAG defendants sought to deprive of their rights: persons engaged in legalized cannabis businesses. The factual allegations establish the "meeting of the minds" between the SCAG defendants and SLED defendants to deprive the Plaintiff (and any other such situated farmer growing hemp accused by DAG of a willful violation) of his due process rights. And the Plaintiff specifically pled the SCAG and SLED defendants vehement and public opposition to legalized cannabis, giving rise to a reasonable inference to that as motivation behind the conduct complained of in the complaint. (Complaint, ¶¶55-56).

Moreover, the Plaintiff would distinguish *Griffin*, arguing that the class requirement set out in *Griffin*, was a requirement the Court imposed given the specific facts of *Griffin*: equal protection claims arising from the conduct of **private** actors. Understandably, the *Griffin* court imposed this class requirement, as protection against a diluge of equal protection claims being

10

brought by persons, not members of any suspect class, aggrieved by the conduct of private actors. Here, no such risks are present. The Plaintiff alleges a violation of constitutional rights, including his procedural due process rights, arising from conduct **by state actors**.

In *Bray v. Alexeandria Women's Health Clinic*, the United States Supreme Court explained that a conspiracy is not "for the purpose" of denying equal protection simply because it has an effect upon a protected right. The right must be "aimed at;" its impairment must be a coinscious objective of the enterprise. The "intent to deprive a right" requirement demands that the defendant do more than merely be aware of a deprivation of right that he causes, and more than merely accept it; he must act at least in part for the very purposes of producing it. The factual allegations pled show that denying due process to the Plaintiff and similarly situated farmers was the direct and intended result of the SCAG and SLED defendants' meeting of the minds. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993).

The Plaintiff argues he has sufficiently pled §1985 claim to be allowed to proceed with discovery and develop further evidence which would support such a claim.

As such, the argument that Plaintff's §1986 claims fails for lack of a §1985 claim fails.

As to the argument that the Plainiff is barred from asserting a §1986 claim by the statute of limitations, Plaintiff's complaint sufficiently pleads factual allegations justifying equitable tolling. *See* Gaspard v. DEA Task Force, 2016 U.S. District LEXIS 59451 at 27 (C.D. Cal. April 4, 2016) (finding plaintiff had "not pled facts showing entitlement to equitable tolling" in on §1986 claims).

The Fourth Circuit has "to be entitled to equitable tolling, an otherwise time-barred petitioner must present (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." United States v. Sosa, 364 F.3d 507,

512 (4th Cir. 2004). In this case, the Plaintiff's complaint is replete with allegations concerning the SCAG defendants' co-defendants intentional and willful attempts hide the SCAG defendants involvement in the conspiracy. Paragraphs 134-184 show the extent the SCAG defendants conduct was hidden from the Plaintiff, with both the DAG and SLED defendants refusing to identify and produce responsive communications showing the SCAG defendants involvement in the conspiracy.

The Plaintiff's complaint specifically alleges how the SCAG defendants "amended" opinions were not disclosed to the Plaintiff, the Marion County trial court or the South Carolina Court of Appeals. (Complaint, ¶142).

The SCAG defendants are well aware that the Plaintiff in this case was not aware of the extent of their involvement until May 31, 2022 at the earliest, as that is the date of SCAG's initial response to a subpoena served by the Plaintiff in the Dorchester County state case. Plaintiff would note that in responding to that subpoena, SCAG initially redacted numerous emails claiming attorney-client privilege, a claim that was challenged by the Plaintiff, leading SCAG to supplement their response on June 9, 2022, producing all the emails without redaction.

No one can credibly challenge the efforts the Plaintiff has taken in his state cases to obtain discovery. The record in those State cases, recounted in large part through his factual allegations in this complaint, show the extraordinary circumstances the Plaintiff has had to overcome to obtain discovery in his State cases in order to have knowledge of the involvement of the SCAG defendants to deprive him of his rights. No one can credibly argue that the Plaintiff has not timely prosecuted Federal claims against those SCAG defendants supported by that evidence, once it was discovered. As such, any argument that the statute of limitations on Plaintiff's §1986 claims has run should be defeated through the application of equitable tolling of that statute of limitations.

### IV.     The SCAG defendants are not entitled to immunity

The SCAG defendants begin their arguments for immunity by claiming they are entitled to absolute immunity.

Government officials "bear the burden of showing that public policy requires and exemption from suit." Cleavinger v. Saxner, 474 U.S. 193 (1985). The actions of prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity "represents the norm" for executive officers. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

A prosecutor bears the heavy burden of establishing entitlement to absolute immunity. In light of the the U.S. Supreme Court's "quite sparing" recognition of absolute immunity to 42 U.S.C. §1983, a court begins with the presumption that qualified rather than absolute immunity is appropriate. Odd v. Malone, 538 F.3d 202, 207-08 (3rd Cir. 2008) (citing to Carter v. City of Philadelphia, 181 F.3d 339, 355 (3rd Cir. 1999) and Burns v. Reed, 500 U.S. 478, 486-87 (1991).

**Quasi-Judicial & Prosecutorial Absolute Immunity**

The SCAG defendants argue they are entitled to quasi-judicial immunity for issuing advisory opinions and deciding whether to represent state officers.[4] First, these arguments ignore the actual conduct the Plaintiff has complained of, which includes conduct in which it is alleged the SCAG defendants futhered the harm to the Plaintiff through attempts to spin public perception and control the media narrative about the Plaintiff's arrest and the destruction of his hemp crop.

---

4 Plaintiff would note the factual allegations detailing the SCAG defendants conduct **after** the September 19, 2019 arrest and destruction of the hemp crop are not offered to allege that the SCAG defendants harmed him in considering to represent SLED. Rather, they are offered to show the knowledge the SCAG defendants had and their continued conduct in furtherance of denying the Plaintiff due process and obstruct justice even **after** he had been arrested and his hemp crop destroyed.

13

(Complaint, ¶¶211-213). This is conduct wholly unrelated to "simply doing their jobs" of "issuing advisory opinion." (Motion, p.21).

Here, the SCAG defendants' arguments reach a hypocritical juncture wherein having just argued that the Plaintiff's claims cannot succeed due to a lack of redressability against the SLED defendants and they had no "power" whatever to control SLED's discretion regarding criminal enforcement (Motion, p.18), they now argue they should enjoy an immunity based upon the idea that they, like a judge, "exercise a discretion similar to exercised by judges." McCray v. Maryland, 456 F.2d 1, 3 (4th Cir. 1972). Conversely, where an official is not called upon to exercise judicial or quasi-judicial discretion, courts have "properly refused to extend to him the protection of absolute judicial immunity, regardless of any apparent relationship of his role to the judicial system." McCray at 3-4.

The SCAG defendants seek to have their cake and eat it too, arguing on one hand, their opinions had no significance in this case, but on the other hand, comparing themselves to a judge, exercising their discretion to render a decision akin to a court order. This is also while arguing that they had no discretion in issuing the opinions, arguing that under S.C. Code §1-7-110, "the South Carolina Attorney General must give advice to state officers on "questions of law" only. (Motion, p.14).[5]

The SCAG defendants ignore that just because they may typically be "prosecutors" and the opinions they issued are "legal advice," Courts recognize that does not automatically entitle them

---

[5] Plaintiiff would note the blatant contradiction in the SCAG defendants arguing they are entitled to quasi-judicial immunity, then turning arguing for prosecutorial immunity because the Attorney General is "the chief prosecuting officer of the State of South Carolina for both criminal and civil proceedings" (Motion, p.25, emphasis in original), positions in direct violation of the South Carolina Constitution. *See* Art.I, §22 South Carolina Constitution ("No person…shall…be subject to the same person **for both prosecution and adjudication**…"), emphasis added.

14

to absolute immunity. "A prosecutor is not entitled to absolute immunity when providing police advice during a criminal investigation." Safar v. Tingle, 859 F.3d 241, 249 (4th Cir. 2017) (citing to Burns v. Reed, 500 U.S. 259, 273 (1993).

Similarly, these arguments ignore that some of the alleged harmful conduct by the SCAG defendants can in no way be considered quasi-judicial or prosecutorial conduct. Specifically, the complaint pleads factual allegations concerning extra judicial statements to the media (¶¶211-213, Complaint), which is conduct that the South Carolina Rules of Professional Conduct specifically exclude from being acceptable conduct by a prosecutor (and would similarly be unacceptable conduct by anyone in a quasi-judicial role). *See* Rule 3.8(f) of Rule 407 SCRPC.

Judicial or "quasi-judicial" immunity attaches to actions "**intimately associated with the judicial phases of litigation**." Giuffre v. Bissel, 31 F.3d 1241, 1251 (3rd Cir. 1994), quoting Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984 (1976), (emphasis added).

In short, none of the conduct complained of against the SCAG defendants involves direct advocacy at trial or is closely associated with the judicial phases of litigation. In fact, the SCAG defendants' conduct in this case specifically provided an avenue for the SLED defendants to violate the Plaintiff's constitutional rights **without any judicial phase**.

"When it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or administrative role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." Hill v. City of New York, 45 F.3d 653, 663 (1995).

**Qualified Immunity**

The Fourth Circuit has noted that officials are likely **not** entitled to qualified immunity when the officials conduct knowingly violated the law or constituted deliberate indifference. In

*Thompson*, the Fourth Circuit suggested the court may skip the "clearly established" prong of the qualified immunity analysis in the event of an "officer's knowing violations of the law" because it is "per se unreasonable." Thompson v. Virginia, 878 F.3d 89, 97 n.3 (4th Cir. 2017).

"If there are genuine issues of fact concerning a defendant's deliberate indifference, the 'defendant may not avoid trial on the grounds of qualified immunity'." Cox v. Quinn, 828 F.3d 227, 238 n.4 (4th Cir. 2016). The United States Supreme Court has specifically recognized the importance of drawing inferences in favor of the non-movant in qualified immunity cases, and allowing cases presenting questions of material fact to proceed. Tolan v. Cotton, 572 U.S. 650, 656-57 (2014).

The facts pled by the Plaintiff establishes that there is a genuine issue of material fact that the SCAG defendants knowingly violated the law. Through their own August 8th opinion, the SCAG defendants warned that engaging in the very conduct they subsequently conspired to facilitate could violate the Plaintiff's constitutional rights. Further, as pled in the complaint, the SCAG defendants had knowledge that the Chief Administrative Judge for Dorchester County had refusd to authorize the destruction on the Plaintiff's hemp crop without a hearing. (¶206, Complaint). Those factual allegations support a reasonable infrernece of "knowing violations of the law" and deliberate indifference.

All of the above shows that genuine issues of material fact exist as to whether the South Carolina Attorney General Defendants violated the Plaintiff's rights and that the SCAG defendants motion should be denied.

**V.     In the alternative to dismissal, Plaintiff would request leave to Amend**

While Plaintiff argues that the defendants' motions for dismissal should be denied, in the event the Court were to find that the Plaintiff's complaint has failed to state a claim for relief under

Rule 12(b)(6), or failed to sufficiently pled facts supporting genuine issues of material fact avoiding immunity arguments, to the extent dismissal was warranted, the Plaintiff would respectfully request that the Court allow the Plaintiff leave to file an amended complaint to correct any such deficiencies.

Generally, courts "should freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2). A motion to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 217-18 (4th Cir. 2019).

In the present case, if the Court were to agree with the SCAG defendants that the Plaintiff cannot successfully prosecute claims against the SCAG defendants under 42 U.S.C. §1985 or §1986, the Plaintiff has pled sufficient factual allegations which would support 42 U.S.C. §1983 claims against the SCAG defendants and should be allowed leave to amend.

Specifically, the pled factual allegations support §1983 claims for procedural due process violations, as there are sufficiently pled allegations against the SCAG defendants directly impacting a property right created by South Carolina law - the acts/omissions by the SCAG defendants assisting in the deprivation of the Plaintiff's property in direct violation of the Art. I, Sec. 22 of the South Carolina Constitution which states:

> No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure presecribed by the General Assembly, and he shall have in all such instances the right to judicial review.

There can be no question that at the time his property was destroyed, the state of South Carolina's process for effecting the deprivation of the Plaintiff's property interest was deficient,

as the very procedures used by the defendants deprived the Plaintiff of his property in direct conflict with his rights under Art.I, Sec. 22 of the South Carolina Constitution. Not only did the defendants in this case deny the Plaintiff of due process **prior** to the deprivation of his protected interest, they willfully and intentionally denied him of a postdeprivation remedy. *See* Bogart v. Chappell, 396 F.3d 548, 563 (4th Cir. 2005) ("Under the *Parratt/Hudson* doctrine, the random and unauthorized euthanization of Bogart's animals by the Defendants – however atrocious – did not constitute a violation of Bogart's procedural due process rights because a meaningful postdeprivation remedy for the loss is available.").

"Overlapping state remedies are generally irrelevant to question of existence of a cause of action under §1983. A plaintiff, for example, may bring a §1983 action for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes, and despite the fact that there are common-law remedies for trespass and conversion. As was noted in *Monroe*, in many caes there is "no quarrel with the state laws on the books," instead, the problem is the way those laws are or are not implemented by state officials." Zinermon v. Burch, 494 U.S. 113, 124-25 (1990), citing Monroe v. Pape, 365 U.S. 167 (1961).

A plaintiff states a procedural due process claim where the erroneous deprivation was pursuant to conduct that was authorized, in the sense that it was an abuse by state official of "broadly delegated uncircumscribed power to effect the deprivation at issue." Zinermon at 136. The majority in *Zinermon* suggests that plaintiffs can make out procedural due process claims even where the deprivation has not been pursuant to any formally established state procedure, indeed, even where the conduct effecting the deprivation arguably is in violation of or contrary to formally enacted state procedures. *See* e.g., Summers v. State of Utah, 927 F.2d 1165, 1170 (10th Cir. 1991) (suggesting that procedural due process claim may exist against individual officers who had

18

effected deprivation in a manner inconsistent with established state procedures); Coggin v. Longview Independent School Dist., 337 F.3d 459, 466 (5th Cir. 2003) ("When a school board disregards the statutory scheme, here depriving the employee of his right to appeal,…it may subject itself to liability, not for the act of another but for its own act.").

As such, the Plaintiff would respectfully request leave to amend to correct any such deficiencies if found by the Court.

## CONCLUSION

For the reasons stated above, the Plaintiff respectfully asks that Court deny the Defendant's motion or in the alternative, allow the Plaintiff leave to amend.

Respectfully submitted,

**WUKELA LAW FIRM**

s/Patrick J. McLaughlin
PATRICK J. MCLAUGHLIN (Fed. ID. No.9665)
P.O. Box 13057
Florence, SC 29504-3057
Telephone:  843-669-5634
Facsimile:   843-669-5150
Email:  patrick@wukelalaw.com
-and-
**WILLIAMS & WILLIAMS**
C. Bradley Hutto (Fed. ID. No. 2024)
P.O. Box 1084
Orangeburg, SC 29116
Phone: (803)534-5218
Fax:    (903)536-6298
cbhutto@williamsattys.com

November 28, 2022                                    **ATTORNEYS FOR PLAINTIFF**